**WELLS FARGO BANK, Plaintiff,**

v.

**BOURNS, INC., Defendants.**

**No. C–93–03066.**

United States District Court,
N.D. California.

Aug. 5, 1994.

Bruce H. Jackson, Chirag V. Karia, Baker & McKenzie, San Francisco, CA, for Wells Fargo Bank N.A.

Alfred H. Sigman, Jeffrey Lewis, Lucia C. Savage, Sigman & Lewis, Oakland, CA, Thomas W. Johnson, Jr., Marc G. Reich, Irell & Manella, Newport Beach, CA, for Bourns, Inc.

---

### MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiff Wells Fargo Bank ("Wells") brought this action against defendant Bourns, Inc. ("Bourns") seeking reimbursement for costs and liabilities incurred in connection with a Department of Labor investigation of an employee benefit plan sponsored by Bourns. The action is based on an Indemnity Agreement ("Agreement") between Wells and Bourns. Now before this court are the parties' cross-motions for summary judgment. Having considered the parties' submissions and arguments, the court enters the following memorandum and order.

## BACKGROUND

Bourns is the named fiduciary of the Bourns, Inc. Employee Profit Sharing and Savings Plan ("the Plan"), an employee benefit pension plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), section 3(2)(A), 29 U.S.C. § 1002(2)(A). In 1986, Wells became the Plan's directed trustee as defined in ERISA section 403(a), 29 U.S.C. § 1103(a). This provision authorizes plan trustee duties relating to plan investments to be made "subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this act." 29 U.S.C. § 1103(a).

In 1987, at Wells' request, Bourns and Wells entered into the Agreement, which is not part of the Plan. Joint Statement of Undisputed Facts (J.S.) ¶¶ 6–7. The Agreement stated in relevant part that Bourns:

> shall indemnify and hold harmless the Trustee [Wells], its officers, employees and agents from and against all liabilities, losses, expenses and claims (including reasonable attorney's fees and costs of defense) arising out of the Trustee's compliance with instructions from the Investment Advisory Committee ... relating to real estate investments, and Trustee's performance of its duties, or any breach or alleged [sic] breach of its duties with respect to the Plan, participants, and beneficiaries, unless the Trustee commits a breach of its duties by reason of its negligence or willful misconduct. Expenses incurred by the Trustee which it believes to be subject to indemnification hereunder shall be paid by the Company upon the Trustee's request, provided the Trustee undertakes to repay such amounts plus interest thereon at the legal rate from the date of such payment in the event that in the final judgement [sic] of a court of competent jurisdiction the expenses are not subject to indemnification hereunder.

J.S., Ex. 3.

Between 1986 and 1990 Wells, acting at the behest of the Investment Advisory Committee ("IAC") made up of Bourns officers and

directors, invested Plan assets in a real estate project known as Mountain View Homes ("MVH"). The Employee Profit Sharing and Savings Trust Agreement establishes the IAC as "the named fiduciary" for the Plan with respect to its "control and management." The IAC is given responsibility over the investment manager and over investment of the Plan's funds. Complaint, Ex. B at 6–9. The MVH project was not successful and the Plan lost several million dollars.

After MVH failed, the United States Department of Labor ("DOL") found that Bourns, its board of directors and the IAC had breached their fiduciary duties under ERISA with respect to the MVH investments and ordered Bourns to restore to the Plan all losses related to those investments.

As a result of the DOL investigation, Wells has incurred various expenses defending against the claims that it improperly followed IAC instructions. In an earlier civil action, Bourns sued Wells before this court for breach of fiduciary duties under ERISA and for breach of contract under California law. This court found that Bourns' claims under ERISA were barred by ERISA's statute of limitations and that Bourns' state law claims were preempted by ERISA. *See Bourns v. Wells Fargo,* C–93–3961, 1994 WL 36998 (order filed Feb. 2, 1994). In 1993, Wells sought reimbursement from Bourns pursuant to the Agreement. Bourns has paid $43,-411.00 to Wells, but has refused to pay any additional amounts. Wells has requested reimbursement from Bourns under the terms of the Agreement for expenses totalling $175,508.28 and has brought this action in order to compel payment by Bourns.

*LEGAL STANDARD*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying portions of the record which show that the nonmoving party has disclosed no "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Although the moving party is not required to support its motion with affidavits or other material, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53, it does not surmount its burden through conclusory allegations as to the state of the record. The moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1969).

The court's function on a motion for summary judgment is not to make credibility determinations. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion.

In the instant case, both parties are moving for summary judgment. They agree, therefore, that no genuine issues of fact remain and that the question presented is purely a matter of law. *See Starsky v. Williams,* 512 F.2d 109, 111 (9th Cir.1975).

*DISCUSSION*

I. *ERISA Preemption*

A threshold question in this action is whether Wells' state law contract claim is

preempted by ERISA. In order to ensure that pension and benefit plans would be an exclusively federal concern, Congress included an extremely broad preemption clause as part of ERISA. The clause provides that "any and all State laws insofar as they may now or hereafter relate to an employee benefit plan" are superseded by ERISA. 29 U.S.C. § 1144(a). The term "any and all State laws" is defined by ERISA as encompassing "all laws, rules, regulations, or other State action having the effect of law, of any state." 29 U.S.C. § 1144(c).

The "relate to" language in ERISA's preemption provision has been construed broadly as well, to include any law which has "reference to" or "connection with" an ERISA plan. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *see also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). "A state cause of action may 'relate to' a benefit plan, and thereby be preempted, even if it is not specifically designed to affect the plan or the effect is only indirect." *Ingersoll–Rand,* 498 U.S. at 139. Furthermore, "[t]he ERISA preemptive provision is to be broadly construed and extends to common law tort and contract actions." *Gibson v. Prudential Ins. Co. of America,* 915 F.2d 414, 416 (9th Cir.1990). Thus, not merely laws aimed exclusively at employee benefit plans, but also generally applicable laws, are preempted by ERISA. *See Pilot Life,* 481 U.S. at 47–48, 107 S.Ct. at 1552–53.

However, not *all* generally applicable laws which in some way affect an employee benefit plan are preempted. *See, e.g., Mackey v. Lanier Collection Agency* 486 U.S. 825, 832–33, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988) (holding that Georgia's state law garnishment procedure is not preempted by ERISA); *Shaw v. Delta Air Lines, Inc.* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983) (holding that New York's Disability Benefits Law is not preempted by ERISA).

This Circuit has developed a test for determining what state causes of action are preempted by ERISA. *See General American Life Ins. Co. v. Castonguay,* 984 F.2d 1518, 1521 (9th Cir.1993). Because ERISA

> comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee, ... [s]tate laws regulating these relationships (or the obligations flowing from these relationships) are particularly likely to interfere with ERISA's scheme [and] are presumptively preempted.

*Id.* (emphasis in original). Therefore, in order to determine whether the state law in question is preempted, a court must ask whether "the state law reaches a relationship which is already regulated by ERISA.... Any regulation of the relationship is basis enough for preemption." *Id.* at 1522; *see also Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1467 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987) (noting actions often preempted by ERISA where they affect "relations among the principal ERISA entities— the employer, the plan, the plan fiduciaries, and the beneficiaries ...").

Here, Wells urges the court to find that state contract law regarding indemnification agreements is not preempted by ERISA. It argues that because ERISA explicitly contemplates the existence of some indemnification agreements, *see* 29 U.S.C. § 1110, but does not provide a mechanism for their enforcement, therefore state law methods for enforcement should not be preempted. The court finds this argument to be unavailing.

Wells alleges that Bourns breached an agreement to indemnify Wells for liabilities and expenses arising from Wells' conduct as a fiduciary of a plan covered by ERISA. As Trustee of the Plan, Wells was a fiduciary under ERISA in that it managed the Plan, including holding and distributing assets. *See* 29 U.S.C. § 1002(21)(A). As Plan Spon-

sor, Bourns was also a fiduciary under ERISA. As fiduciaries, Bourns and Wells come squarely within ERISA provisions, and thus are in a "relationship which is already regulated by ERISA." *Castonguay*, 984 F.2d at 1522; *see also Sommers*, 793 F.2d at 1467–68.

Therefore, the court finds that Wells' state law breach of contract claim is preempted.

## II. *Indemnity Agreements Under ERISA*

■ The question remains whether the Agreement can be enforced under ERISA through federal common law. Although ERISA discussed the existence of indemnification agreements, there is no ERISA provision that expressly provides for the enforcement of such agreements. However, "[t]he courts are directed to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA." *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 (9th Cir.1984); *see also Castonguay*, 984 F.2d at 1523 (where state law is preempted and ERISA provides no explicit rule, "federal courts must create it as a matter of federal common law.") When application of federal common law is necessary, a court must "examine the ERISA statutory scheme and the policy judgments it embodies, and come up with a rule that best comports with them." *Castonguay*, 984 F.2d at 1523.[1]

Under ERISA § 410, 29 U.S.C. § 1110, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty ... shall be void as against public policy." This section goes on to provide that nothing precludes

(1) a plan from purchasing insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse against the fiduciary in the case of a breach of a fiduciary obligation of by such fiduciary; [or] ...

(3) an employer or an employee organization from purchasing insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with regard to an employee benefit plan.

The Department of Labor has interpreted this provision

to permit indemnification agreements which do not relieve a fiduciary of responsibility or liability.... Indemnification provisions which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under section 410(b)(3), are therefore not void under section 410(a).

Examples of such indemnification provisions are: (1) Indemnification of a plan fiduciary by (a) an employer, any of whose employees are covered by the plan....

29 C.F.R. § 2509.75–4.

■ The court finds that indemnification agreements are enforceable under ERISA through federal common law by the parties to them as long as the agreements do not violate section 410 of ERISA, 29 U.S.C. § 1110, *supra.* Such a rule comports with ERISA's statutory scheme and the policy judgments it embodies. As discussed above, ERISA's statutory scheme provides certain rules governing the content and scope of agreements which indemnify fiduciaries. The interpretive bulletin issued by the Department of Labor also confirms that indemnification of a plan fiduciary which does not relieve the fiduciary from its ERISA responsibilities is not against public policy. 29 C.F.R. § 2509.75–4. If the ERISA scheme expressly affirms and approves indemnities, then methods for enforcing such agreements must be available. If not, the ERISA provi-

---

1. The Ninth Circuit has also held that the use of law of the state where the lawsuit takes place as the proper federal rule of decision is inappropriate. Choosing one particular state law "makes little sense when we deal with a comprehensive regulatory statute that expressly preempts state law and that seeks to impose a uniform nationwide scheme." *Castonguay*, 984 F.2d at 1523 n.

5; *see also PM Group*, 953 F.2d 543, 546 (9th Cir.1992). However, the federal common law applied by the court in this case regarding the enforceability of indemnification agreements tracks general state law. *See, e.g., Rossmoor Sanitation Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 633, 119 Cal.Rptr. 449, 532 P.2d 97 (1975).

sions governing indemnity agreements and the federal regulation, 29 C.F.R. § 2509.75–4, developed pursuant to them would be rendered meaningless.[2]

According to Bourns, absence of a specific ERISA provision is fatal to Wells' cause of action. Bourns further argues that ERISA provides no remedy because 1) as a former fiduciary, Wells has no standing to sue under ERISA; and 2) even if Wells has standing, it is not seeking either of the two types of relief authorized under ERISA § 502(a), 29 U.S.C. § 1132(a).

■ These arguments miss the mark, however. The rules fashioned by federal common law are governed by the overall policies and procedures delineated in ERISA, but they are not limited by the specific language of the statute. The very purpose of creating federal common law is to fill in the gaps left by the explicit provisions of ERISA. *See Castonguay,* 984 F.2d at 1523. Thus the fact that ERISA itself grants standing to only specific classes and provides for limited relief is not dispositive. As discussed above, a rule that provides a mechanism for enforcement of indemnity agreements is not in conflict with, and indeed comports with, the statutory scheme of ERISA as a whole.

Wells is seeking to enforce an indemnification agreement which is expressly provided for in ERISA. For this provision to be fully viable under ERISA, the parties to such agreements must be able to enforce them. Therefore, the court finds that the Agreement is enforceable as a matter of federal common law, provided it does not violate section 410 of ERISA, 29 U.S.C. § 1110.

### III. *Validity of the Indemnity Agreement Under Section 410*

■ The court must now determine whether the Agreement is valid under ERISA. Although provisions which relieve a fiduciary "from responsibility or liability for any responsibility, obligation, or duty" imposed by ERISA are void, a plan may purchase insurance "to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against a fiduciary in the case of a breach of fiduciary obligation by such fiduciary." 29 U.S.C. § 1110. In interpreting this provision, the DOL found that "[i]ndemnification provisions which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under section 410(b)(3), are therefore not void under section 410(a)." 29 C.F.R. § 2509.75–4.

The court finds that the Agreement at issue here does not violate ERISA § 410, 29 U.S.C. § 1110 and is, therefore, enforceable by Wells. This type of agreement, which indemnifies a Plan fiduciary (Wells) by an employer (Bourns), was expressly found by the DOL to be a valid type of indemnification agreement under ERISA § 410. *See* 29 C.F.R. § 2509.75–4, example (1)(a). Furthermore, the agreement does not impermissibly relieve Wells of any responsibility relating to Wells' actions as Plan Trustee, but instead requires Bourns "to the extent permitted under ERISA" to indemnify Wells from specific liabilities. Rather than exempting Wells from its duties, the Agreement shifts its potential liability incurred as fiduciary in much the same way as would insurance.

---

**2.** The court notes that this case is distinguishable from contribution cases such as *Kim v. Fujikawa,* 871 F.2d 1427 (9th Cir.1989) and *Call v. Sumitomo Bank,* 881 F.2d 626 (9th Cir.1989). In both cases, the Ninth Circuit held that a fiduciary could not seek contribution from other fiduciaries under ERISA. *Kim,* 871 F.2d at 1432; *Call,* 881 F.2d at 631. The plaintiff in *Kim* argued that a right of contribution should be implied under ERISA, even though ERISA does not explicitly provide for contribution. The court found that "Congress did *not* intend to authorize other remedies [under ERISA] that it simply forgot to incorporate expressly." *Kim,* 871 at 1432

(quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980) (emphasis in original). The plaintiff in *Call,* who had been found to be a breaching fiduciary by the DOL, sought contribution from other breaching fiduciaries. *Call,* 881 F.2d at 630–31.

Here, Wells is not asking the court to create a new remedy under ERISA but rather to provide a method to enforce a pre-existing indemnification agreement. Moreover, this is not a case, as is *Call,* where a party already adjudged to be a wrongdoer is asking the court to relieve it of a portion of its liability. *Id.*

Such an agreement is valid under ERISA. In rendering void as against public policy certain exculpatory agreements, ERISA § 410 seeks to avoid provisions which circumvent express statutory requirements to the detriment of Plan beneficiaries. Such is not the case here. Instead, this agreement, which is not even part of the Plan itself, requires Bourns qua plan sponsor—not the Plan or the beneficiaries—to reimburse Wells for certain expenses.

The court finds that each of the other district court cases where indemnity agreements have been held to be void under ERISA contain key factors which distinguish it from the instant case. In *Donovan v. Cunningham*, the court held that an indemnification agreement which was part of an ERISA-covered plan was void. 541 F.Supp. 276, 289 (S.D.Tex.1982), *aff'd in part, rev'd in part, vacated in part on different grounds*, 716 F.2d 1455 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). However, the court based its decision primarily on the fact that the ERISA-covered plan itself would bear the financial burden of the indemnification. It found such a situation to be inconsistent with ERISA § 410, 29 U.S.C. § 1110, largely because it was not "a mere shifting of liability incurred by a fiduciary in the same manner as insurance." *Donovan*, 541 F.Supp. at 289. The goal of the court was to protect the plan itself from incurring any expense as a result of the suit. Here, there is no possibility that the beneficiaries themselves would suffer as a result of enforcement of the Agreement.[3]

In *Leigh v. Engle*, the court also held an indemnification agreement invalid. 619 F.Supp. 154 (D.C.Ill.1985), *aff'd*, 858 F.2d 361 (7th Cir.1988). However, in *Leigh*, the trustee had been judicially determined to be in breach of its fiduciary duties and was seeking reimbursement for attorneys' fees incurred as a result of defending itself. The court found that "indemnification for legal fees when a breach of trust has been established . . . is not allowed under ERISA." *Leigh*, 619 F.Supp. at 159. In the instant case, Wells has not been found by the court nor by

the DOL to be in breach of any of its fiduciary duties under ERISA. In fact, most of Wells' reimbursable expenses arose from defending a lawsuit where no liability was found. *See Bourns v. Wells Fargo*, Civ. Action No. C–93–2961, 1994 WL 36998 (order filed Feb. 2, 1994) (dismissed on statute of limitations grounds).

Finally, the court finds that *Martin v. Nationsbank of Georgia*, 1993 WL 345606 (N.D.Ga.1993), the case primarily relied upon by Bourns, also is not applicable in this case. In *Martin*, which is currently on appeal to the Fifth Circuit, the indemnity agreement at issue allowed indemnification only when the trustee complied with the direction of plan participants. *Id.* at *2. Thus, the agreement was void because it encouraged the trustee not to exercise its "independent judgment in the performance of its fiduciary duties." *Id.* at *3.

The Agreement at issue here is significantly different. First, Wells was indemnified only for claims arising out of its compliance with instructions of the IAC. More importantly, as a directed trustee, Wells was *required* to follow the direction of the IAC in regard to investment decisions on behalf of the Plan and thus had very limited "independent judgment" to exercise. The directed trustee relationship was described in detail in Article 10.07 of the Plan, as required by ERISA § 402(b)(2), 29 U.S.C. § 1102. For example, section 4 of Article 10.07 of the Plan provided that the duty of the trustee was to invest the fund "upon the direction of the . . . Investment Advisory Committee." Section 5 went on to state that "the Trustee shall not be liable for, nor responsible for losses . . . arising from [its] compliance with proper directions of the Investment Advisory Committee." J.S., Ex. 2, §§ 4–5. Because of this directed trustee relationship, which is approved under ERISA and was detailed under the Plan, Wells had very limited independent judgment to exercise with respect to Plan investments, and thus was not encouraged to abdicate its judgment because of the Agreement.

---

**3.** At oral argument, counsel for Bourns acknowledged that there was no danger that the Plan beneficiaries in this action would be financially harmed by enforcement of the Agreement.

The court finds that the Agreement is enforceable and does not violate ERISA § 410, at least in so far as it covers expenses incurred by Wells in defending against the claims that arose out of its following IAC instructions. However, there remains a fact-based question of whether or not there was negligence or willful misconduct on the part of Wells, which might release Bourns from its obligation to indemnify Wells. Although this court previously ruled that the statute of limitations prevents Bourns from bringing claims against Wells based on allegations of negligence or willful misconduct, that ruling does not prevent Bourns from using any improper conduct by Wells as a defense against a claim by Wells for expenses pursuant to the Agreement. This question cannot be resolved on this summary judgment motion.

## CERTIFICATION

At the joint request of the parties, the court determines that this order is appropriate for immediate appeal pursuant to 28 U.S.C. § 1292(b). That section provides that an order not otherwise appealable may be appealed where the district judge determines that the order "involved a controlling question of law ... and that an immediate appeal from the order may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b).

As the above analysis makes clear, the issues of 1) whether indemnity agreements are preempted by ERISA and, 2) if so, whether such agreements are nonetheless enforceable under federal common law, have not been squarely addressed by the Ninth Circuit. The available precedent leaves "substantial grounds for difference of opinion" on these matters.

Furthermore, Bourns has appealed the previous action involving Wells and the issues in the instant case are inextricably intertwined with those currently on appeal. Judicial efficiency would be promoted, and the termination of this litigation advanced, if these cases were joined for consideration before the Circuit. Upon the ruling on these issues by the Ninth Circuit, the action could then be more efficiently managed by this court.

The court also finds that these are important ERISA issues deserving of Ninth Circuit review. As discussed above, Indemnity Agreements are provided for under ERISA, but ERISA provides no enforcement mechanism. In addition, according to Wells, "directed trustees have traditionally required an employer indemnification from liability in following the directions of a named fiduciary with investment responsibility." It is important to determine when these Agreements are valid under section 410 of ERISA, and what remedies are available to the parties which enter into such agreements, especially if they are common in the employee benefit industry.

Wells maintains that the Agreement requires Bourns to indemnify Wells immediately for costs incurred, subject to reimbursement by Wells if a court of competent jurisdiction finds that there was negligence or willful misconduct on the part of Wells. The court orders that Bourns place $182,524.85, the amount which Wells currently alleges is owed to it in an interest-earning escrow account pending outcome of this action.

## CONCLUSION

For the foregoing reasons, Wells' motion for summary judgment is GRANTED in part and Bourns' motion for summary judgment is DENIED. Within thirty (30) days of the date of this order, the amount of $182,524.85 shall be placed in an escrow account pending the outcome of this action.

The court determines that this order is immediately appealable pursuant to 28 U.S.C. § 1292(b).

IT IS SO ORDERED.