BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM has requested an opinion on the following question:
May the California Public Employees' Retirement System allow its fiduciaries to purchase "waivers of recourse" coverage from its self-insurance program?
 CONCLUSION
The California Public Employees' Retirement System may allow its fiduciaries to purchase "waivers of recourse" coverage from its self-insurance program.
 ANALYSIS
The California Public Employees' Retirement System ("CalPERS") maintains a self-insurance program to provide defense against and indemnification of various claims, including breach-of-fiduciary-duty claims brought against CalPERS fiduciaries as individuals. (See Gov. Code, §§ 11007.4, 11007.8.)[1] The advantage to CalPERS is that the self-insurance program can be operated at lower cost than obtaining commercially available insurance policies. (See §20152.) The CalPERS self-insurance program for its fiduciaries excludes coverage for fines, punitive damages, exemplary damages, claims for intentional acts, and claims arising from a fiduciary's personal gain resulting from deliberate dishonesty, among other exclusions.
The question presented for resolution concerns whether CalPERS may offer its fiduciaries, at reasonable cost, a "waivers of recourse" insurance policy to cover their personal liability. The proposed insurance would exclude coverage against punitive and exemplary damages and compensatory damages arising from intentional acts. We conclude that CalPERS may sell such insurance coverage to its fiduciaries.
Preliminarily, we note that the Legislature has enacted a comprehensive statutory scheme, the Public Employees' Retirement Law (§§ 20000-21703), governing the payment of retirement compensation to public employees. (See Pomona Officers' Assn. v. City of Pomona (1997)58 Cal.App.4th 578, 584-585; Board of Administration v. Wilson (1997)52 Cal.App.4th 1109, 1119-1120; Oden v. Board of Administration (1994)23 Cal.App.4th 194, 198; Claypool v. Wilson (1992) 4 Cal.App.4th 646,653-655; City of Sacramento v. Public Employees Retirement System (1991)229 Cal.App.3d 1470, 1478-1479; Valdes v. Cory (1983) 139 Cal.App.3d 773,780-783.) While CalPERS is part of the State and Consumer Services Agency (§ 20002), it provides retirement benefits not only for state employees but also for the employees of local public agencies that have contracted for coverage (Quintana v. Board of Administration (1976)54 Cal.App.3d 1018, 1021; 71 Ops.Cal.Atty.Gen. 129, 129-130 (1988); 70 Ops.Cal.Atty.Gen. 189, 190-191 (1982)).
CalPERS is managed by a Board of Administration (§ 20120; "Board"), which is comprised of 13 members (§ 20090;72 Ops.Cal.Atty.Gen. 58, 59 (1989)) serving four-year terms of office (§ 20095). Both Board members and employees of the Board have fiduciary responsibilities with respect to the management of CalPERS on behalf of employee participants and beneficiaries.[2]
Section 20150 states:
 "A board member or employee of the board shall not, directly or indirectly:
 "(a) Have any interest in the making of any investment, or in the gains or profits accruing therefrom.
 "(b) For himself or herself or as an agent or partner of others, borrow any funds or deposits of this system, nor use those funds or deposits in any manner except to make current and necessary payments authorized by the board.
 "(c) Become an indorser, surety or obligor on investments by the board."
Section 20151 additionally provides:
 "The board and its officers and employees shall discharge their duties with respect to this system solely in the interest of the participants and beneficiaries:
"(a) For the exclusive purpose of both of the following:
 "(1) Providing benefits to members, retired members, and their survivors and beneficiaries.
"(2) Defraying reasonable expenses of administering this system.
 "(b) Minimizing the employers' costs of providing benefits under this part.
 "(c) By investing with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with those matters would use in the conduct of an enterprise of a like character and with like aims."
Other fiduciary duties are placed upon the Board and its employees by the Legislature. (See 82 Ops.Cal.Atty.Gen. 120, 122-124 (1999).)
Moreover, the Constitution requires the performance of fiduciary duties in managing a public retirement system such as CalPERS. Section 17 of article XVI of the Constitution provides:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to all of the following:
 "(a) The retirement board of a public pension or retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. The retirement board shall also have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries. The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.
 "(b) The members of the retirement board of a public pension or retirement system shall discharge their duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system. A retirement board's duty to its participants and their beneficiaries shall take precedence over any other duty.
 "(c) The members of the retirement board of a public pension or retirement system shall discharge their duties with respect to the system with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of a like character and with like aims.
 "(d) The members of the retirement board of a public pension or retirement system shall diversify the investments of the system so as to minimize the risk of loss and to maximize the rate of return, unless under the circumstances it is clearly not prudent to do so.
 "(e) The retirement board of a public pension or retirement system, consistent with the exclusive fiduciary responsibilities vested in it, shall have the sole and exclusive power to provide for actuarial services in order to assure the competency of the assets of the public pension or retirement system.
". . . . . . . . . . . . . . . . . . . . . . . . .
With the scope of these fiduciary duties and responsibilities of Board members and employees in mind, we return to the question whether these fiduciaries may purchase insurance from the CalPERS self-insurance program to cover their own liability. Section 7511 authorizes public retirement systems such as CalPERS to purchase liability insurance covering losses caused by "the act or omission of a fiduciary" if the insurance permits "recourse" by the insurer against the fiduciary in case of a breach of fiduciary duty. Section 7511 states:
"Notwithstanding any other provision to the contrary:
 "(a) A public retirement system may purchase insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if the insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by the fiduciary.
 "(b) A fiduciary may purchase insurance to cover liability under this section from and for his or her own account.
 "(c) An employer or an employee organization may purchase insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with regard to an employee benefit plan."
It is evident that the "liability under this section" for which a fiduciary may purchase insurance (§ 7511, subd. (b)) is "liability or losses occurring by reason of the act or omission of a fiduciary," which would include liability arising from "recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by the fiduciary" (§ 7511, subd. (a)). As we pointed out in 71 Ops.Cal.Atty.Gen. 129, 132 (1988), if a fiduciary could not purchase insurance to protect against recourse by the insurer, it would "thwart the objective of protecting the fiduciaries from personal financial responsibility for their breaches of duty." Construing section7511 to give effect to all of its provisions, we conclude that a fiduciary may purchase insurance "from and for his or her own account" to cover liability or losses occurring by reason of an "act or omission."[3]
In our 1988 opinion, we also analyzed "[t]he federal act, after which section 7511 was patterned," containing a similar provision allowing a fiduciary to purchase "`insurance to cover liability under this part from and for his own account.'" (71 Ops.Cal.Atty.Gen., supra,
at p. 136.) The United States Department of Labor has interpreted the federal counterpart of section 7511 as permitting "another party to satisfy any liability incurred by the fiduciary in the same manner as insurance. . . ." 29 C.F.R. § 2509.75-4 (2002).) This interpretation of federal law recognizes a distinction between exculpatory provisions and indemnity agreements; an exculpatory provision relieves or exempts a party from liability for his or her prospective acts, while an indemnity agreement obligates one party to make good a loss or damage that another party has already incurred. (See Wells Fargo Bank v. Bourns, Inc.
(N.D.Cal. 1994) 860 F. Supp. 709, 714-716.) Although an exculpatory provision is generally void as against public policy, an indemnity agreement is not. (Cf. Ins. Code, § 533 [prohibiting insurance coverage for loss caused by willful act of insured].) The distinction between exculpatory provisions and indemnity agreements is well established in California law. (See, e.g., Safeco Ins. Co. v. Robert S.
(2001) 26 Cal.4th 758, 766-767; Rooz v. Kimmel (1997) 55 Cal.App.4th 573,582; Smoketree-Lake Murray, Ltd. (1991) 234 Cal.App.3d 1724, 1734-1735;Lemat Corp. v. Am. Basketball Assoc. (1975) 51 Cal.App.3d 267, 278.) The supplemental insurance that CalPERS proposes to sell to its fiduciaries is an indemnity agreement, not an exculpatory provision. (See SafecoIns. Co. of America v. Robert S., supra, 26 Cal.4th at p. 767.)[4]
While CalPERS may not purchase liability insurance for its fiduciaries without reserving recourse, a CalPERS Board member or employee is permitted to use his or her own funds to purchase insurance to protect against such recourse. Under the proposed insurance coverage, CalPERS would not waive its right to recourse; rather, CalPERS would be made whole from the insurance policy purchased by the Board member or employee.
In addition, the waiver of recourse insurance policy that CalPERS proposes selling to its Board members and employees is not coverage for any and all liability that a fiduciary could incur. CalPERS would exempt from coverage any liability for the intentional acts of a fiduciary required by the terms of Insurance Code section 533 And the coverage would not have the forbidden effect of holding the fiduciary harmless, even for losses falling within the conditions of coverage. The fiduciary would remain legally responsible to CalPERS for any losses incurred.
We conclude that CalPERS may allow its fiduciaries to purchase "waivers of recourse" coverage from its self-insurance program.
[1] All references hereafter to the Government Code are by section number only.
[2] "Fiduciary duty requires the fiduciary `"to act with the utmost good faith for the benefit of the other party."' [Citation.]" (In reMarriage of Duffy (2001) 91 Cal.App.4th 923, 934; see Tyler v. Children'sHome Society (1994) 29 Cal.App.4th 511; In re Marriage of Reuling (1994)23 Cal.App.4th 1428,1438; Gibson v. Government Employees Ins. Co. (1984)162 Cal.App.3d 441, 444-445.)
[3] "`Words used in a statute . . . should be given the meaning they bear in ordinary use.'" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973,977.) "Furthermore, we consider portions of a statute in the context of the entire statute . . ., giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." (Curle v. Superior Court (2001) 24 Cal.4th 1057, 1063.)
[4] We note that our 1988 opinion was based upon constitutional language that was significantly changed four years later as a result of the voters' adoption of Proposition 162. However, the rationale of our prior opinion may be applied to exculpatory provisions, and as so limited, is reaffirmed. (See Wells Fargo Bank v. Bourns, Inc., supra,
860 F. Supp. at pp. 714-716.)