**Charles B. HOOPS, et al., Plaintiffs,**

v.

**ELK RUN COAL COMPANY, INC., Defendant.**

No. Civ.A. 2:99–0188.

United States District Court, S.D. West Virginia, Charleston Division.

July 27, 1999.

Roger D. Hunter, Neely & Hunter, Charleston, WV, for plaintiffs.

Albert F. Sebok and Daniel L. Stickler, Jackson & Kelly, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Plaintiffs' motion to remand. The Court **DENIES** Plaintiffs' motion.[1]

### I. FACTUAL BACKGROUND

Plaintiffs brought this action in the Circuit Court of Boone County. Elk Run removed March 9, 1999.

Plaintiffs were employed at various mines owned by Elk Run. On September 29, 1998 Elk Run informed Plaintiffs they were among a group of 29 employees permanently terminated from their positions due to a reduction in force.

---

1. Also pending is Plaintiffs' motion to voluntarily dismiss Ira Daniels from any further participation in this lawsuit. The Court **GRANTS** the motion and **DISMISSES** Mr. Daniels as a party-Plaintiff.

Count I alleges age discrimination in violation of the West Virginia Human Rights Act (WVHRA). Count I states "Elk Run ... wrongfully and illegally terminated the Plaintiffs who are over age 40 based, at least in part, on consideration of their age, *so that Defendant could avoid paying Plaintiffs who were over age 40 pension benefits which they had nearly earned.* This violated Section 5–11–9 of the West Virginia Human Rights Act." Compl. ¶ 32 (emphasis added). Plaintiffs also allege under Count I "Elk Run ... wrongfully and illegally terminated the Plaintiffs over age 40 so that Defendant could reduce health insurance and other related health benefit costs attributable to said Plaintiffs. This violated Section 5–11–9 of the West Virginia Human Rights Act." [2] *Id.* ¶ 33.

Plaintiffs further allege the terminations were for the purpose of making the company more attractive to, *inter alia,* a prospective purchaser of its assets or stock "by eliminating the retirement and pension benefits and health insurance and related health care benefits as cited" in the complaint. *Id.* ¶¶ 34, 47.

The damages allegedly suffered in Count I include "lost medical benefits ... [and] lost retirement benefits[.]" *Id.* ¶ 35. This damage allegation is repeated throughout the complaint. *See id.* ¶¶ 40 (Count II—Disparate Impact Age Discrimination under the WVHRA); 48 (Count III—Handicap Discrimination); 53 (Count IV—Disparate Impact Handicap Discrimination); 58 (Count V—Unjust Enrichment); 64 (Count VI—Fraud and Negligent Misrepresentation); 68 (Count VII—Intentional Infliction of Emotional Distress); 71 (Count VIII—Race Discrimination); 75 (Count IX—Disparate Impact Race Discrimination).

Based upon the foregoing allegations and claims, Elk Run asserts this Court enjoys removal jurisdiction pursuant to 28 U.S.C. § 1441. Specifically, Elk Run cites section 510 of ERISA, 29 U.S.C. § 1140. As to the non-preempted claims, Elk Run asserts supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is appropriate.

## II. DISCUSSION

ERISA's preemption provision, 29 U.S.C. § 1144(a), provides in pertinent part, "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." *Id.* Recently, federal courts have struggled with the scope of this provision. Earlier decisions from the Supreme Court stated the provision was "conspicuous for its breadth" and had an "expansive sweep." *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In the past three years, however, the Supreme Court has been less willing to apply its early, strong preemption analysis, now admitting the difficulties inherent in interpreting Congress' vague language:

If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson xli (New York ed., World's Classics 1980). But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality. That said, we have to recognize that our prior attempt to construe the phrase "relate to" does not give us much help drawing the line here.

For the same reasons that infinite relations cannot be the measure of pre-emp-

---

**2.** Similar allegations appear elsewhere in the complaint. *See id.* ¶ 44 (alleging termination occurred "in order to reduce Elk Run's health insurance and other related health benefit costs attributable to said Plaintiffs.").

tion, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *see generally* Howard Shapiro *et al., ERISA Preemption: To Infinity and Beyond and Back Again? (A Historical Review of Supreme Court Jurisprudence),* 58 La.L.Rev. 997 (1998).[3] While cognizant of the shift in the law, the Court's task in unraveling the present preemption question does not require substantial analysis or a weaving of prior precedent in search of coherence. The Court can bottom its analysis here not on the unsettled basis of express preemption, but rather upon the settled doctrine of conflict preemption.

In *Travelers,* the Supreme Court made reference to *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), and noted *Ingersoll's* holding "that state laws providing alternative enforcement mechanisms ... relate to ERISA plans, [and] trigger[ ] pre-emption." *Travelers,* 514 U.S. at 658, 115 S.Ct. 1671; *see Selman,* 98 F.3d at 1468.

In *Ingersoll,* the Supreme Court addressed the preemption of a state common-law claim that McClendon was unlawfully discharged to prevent his attainment of benefits under an ERISA plan. Like the instant case, McClendon was fired via a reduction in force. McClendon asserted the "principal reason for his termination was the company's desire to avoid making contributions to his pension fund." *Id.* at 135, 111 S.Ct. 478. He did not assert any ERISA claims, relying instead upon various tort and contract theories. In seeming conflict with McClendon's state claims, like the instant case, was ERISA section 510, 29 U.S.C. § 1140:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

*Id.*[4]

Writing for the Court on the issue of conflict preemption, Justice O'Connor stated:

Even if there were no express preemption in this case, the Texas cause of action would be pre-empted because it conflicts directly with an ERISA cause of action. McClendon's claim falls squarely within the ambit of ERISA § 510....

Unquestionably, the Texas cause of action purports to provide a remedy for the violation of a right expressly guaran-

---

**3.** Our Court of Appeals has stated its belief *Travelers* "signals a narrowing of the Court's view of ERISA preemption." *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1469 n. 14 (1996).

The trend has continued in more recent cases from the Supreme Court. In *California Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), Justice Scalia stated frankly his views in a concurring opinion:

I think it would greatly assist our function of clarifying the law if we simply acknowledged that our first take on this statute was wrong; that the "relate to" clause of the pre-emption provision is meant, not to set forth a test for pre-emption, but rather to identify the field in which ordinary field pre-emption applies....

*Id.* at 336, 117 S.Ct. 832.

**4.** It appears to be undisputed that one qualifying employee benefit plan at least is involved in this case.

teed by § 510 and exclusively enforced by § 502(a). Accordingly we hold that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected" by § 510 of ERISA, "due regard for the federal enactment requires that state jurisdiction must yield."

*Id.* at 142, 145, 111 S.Ct. 478 (citations omitted).[5]

*Ingersoll's* application here could not be clearer. Despite their *ad hoc* protestations, Plaintiffs clearly assert in Count I their termination by Elk Run was for the primary purpose of interfering with their attainment of rights under the applicable plans.[6] Plaintiffs assert, *inter alia,* "Elk Run ... wrongfully and illegally terminated the Plaintiffs who are over age 40 based, at least in part, on consideration of

their age, so that Defendant could avoid paying Plaintiffs who were over age 40 pension benefits which they had nearly earned." Compl. ¶ 32. Such conduct may violate the WVHRA; it clearly violates section 510 of ERISA, however, and it falls squarely within the federal statute's civil enforcement scheme.

Accordingly, this part of Plaintiffs' age discrimination claim presents a state-based direct conflict with section 510 and is, consequently, preempted under *McClendon. See also Dochterman v. First Mississippi Corp.,* 831 F.Supp. 556, 558 (S.D.W.Va. 1993) (holding preemption of state common law claim appropriate where complaint alleged plaintiff was terminated for the purpose of avoiding paying him his employment benefits).[7] Plaintiffs' motion

**5.** The Court notes *Ingersoll's* observations concerning complete preemption, which provides the basis for removal here. The Court is further aware of language in *McClendon's* express preemption analysis noting under the preempted Texas law, "there simply is no cause of action if there is no plan." *Id.* at 140, 111 S.Ct. 478.

**6.** To avoid preemption, Plaintiffs point to other non-benefit-cost-avoidance allegations of their complaint that are incorporated by reference into Count I. It is true that elsewhere in the complaint Plaintiffs make reference to physical handicaps and higher wage rates of older employees, workers' compensation cost factors and other non-benefit-related bases for termination. The primacy of the benefit-related allegations in Count I, however, is illustrated by the fact that five of the six substantive allegations in that Count mention benefits as a motivating factor for termination.

**7.** Plaintiffs rely heavily on *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) and 29 U.S.C. § 1144(d), asserting the two together carve out an exception to preemption when a state civil rights act is at issue. *Shaw* dealt with ERISA preemption of certain New York civil rights laws mandating benefit coverage for pregnant women. Specifically, certain companies subject to ERISA regulation sought injunctions against enforcement of state laws they claim were preempted by ERISA.

*Shaw* found *partial* preemption appropriate but observed under such circumstances *total* ERISA preemption might interfere with the cooperative federal-state civil rights system.

The Supreme Court concluded that total preemption of the New York civil rights law could conceivably "impair Title VII to the extent that the [New York] Human Rights Law provides a means of enforcing Title VII's commands." *Id.* at 102, 103 S.Ct. 2890. In denying complete preemption, then, the Supreme Court found applicable the exception to preemption found in section 1144(d), because preemption would "alter, amend, modify, invalidate, impair, or supersede ... [a] law of the United States," namely Title VII. 29 U.S.C. § 1144(d).

While Plaintiffs' argument is facially compelling, *Shaw* is both factually and legally distinguishable. By example, this case, unlike *Shaw,* involves a claim that falls squarely within ERISA's civil enforcement scheme. Further, this Court's decision accords with *Shaw* in that it leaves the WVHRA "unaffected insofar as it prohibits employment discrimination in hiring, promotion, salary, and the like." *Id.* at 98 n. 17, 103 S.Ct. 2890. Plaintiffs' claims for unlawful discrimination, at least insofar as they do not explicitly implicate section 510, remain, as they should, intact. *See Alwin v. Sprint Communications Co. Ltd. Partnership,* 870 F.Supp. 275, 277 (D.Minn.1994) ("The court agrees that ERISA does not completely preempt the [Minnesota Human Rights Act] and the various employment discrimination claims that may be asserted under the Act. However, when a plaintiff contends that the motivating factor behind her termination was the employer's attempt to avoid benefit payments, preemption is clear."); Paul J. Zech, *Federal Preemption and*

to remand is **DENIED.**[8]

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

*State Exclusive Remedy Issues in Employment Litigation,* 72 N.D.L.Rev. 325, 339 (1996). Accordingly, *Shaw* is not an obstacle to removal here.

8. The Court is not disposed at this time to decide whether any of Plaintiffs' remaining claims are preempted totally by ERISA. Given discovery and further development may change the existing factual and jurisdictional landscape, the Court also reserves the right to reconsider the preemption question at summary judgment. The Court has a continuing obligation to assure itself of subject matter jurisdiction.

Given its present ruling, however, and the fact that Plaintiffs' remaining claims "are so related to [the § 510 claim] ... that they form part of the same case or controversy...." 28 U.S.C. § 1367(a), the Court will exercise supplemental jurisdiction over such claims.