INGERSOLL-RAND CO. *v.* McCLENDON

No. 89–1298.   Argued October 9, 1990—Decided December 3, 1990

O'CONNOR, J., delivered the opinion for a unanimous Court with respect to Parts I and II–B, and the opinion of the Court with respect to Part II–A, in which REHNQUIST, C. J., and WHITE, SCALIA, KENNEDY, and SOUTER, JJ., joined.

*Hollis T. Hurd* argued the cause for petitioner. With him on the briefs were *Glen D. Nager* and *William T. Little.*

*Christopher J. Wright* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr, Deputy Solicitor General Shapiro, Allen H. Feldman,* and *Nathaniel I. Spiller.*

*John W. Tavormina* argued the cause for respondent. With him on the brief was *Michael Y. Saunders.** 

JUSTICE O'CONNOR delivered the opinion of the Court.†

This case presents the question whether the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. § 1001 *et seq.,* pre-empts a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA.

I

Petitioner Ingersoll-Rand Company employed respondent Perry McClendon as a salesman and distributor of construction equipment. In 1981, after McClendon had worked for the company for nine years and eight months, the company fired him citing a companywide reduction in force. McClendon sued the company in Texas state court, alleging that his pension would have vested in another four months and that a principal reason for his termination was the company's desire

---

*Briefs of *amici curiae* urging reversal were filed for the Chamber of Commerce of the United States of America et al. by *Zachary D. Fasman* and *Stephen A. Bokat;* for the Equal Employment Advisory Council et al. by *Robert E. Williams, Douglas S. McDowell, Ann Elizabeth Reesman,* and *W. Carl Jordan;* and for the Washington Legal Foundation by *Daniel J. Popeo, Richard A. Samp,* and *John Scully.*

Briefs of *amici curiae* urging affirmance were filed for the National Employment Lawyers Association et al. by *Jeffrey Lewis* and *Janet Bond Arterton;* for the National Governors' Association et al. by *Charles Rothfeld* and *Benna Ruth Solomon;* and for Thomas L. Bright *pro se.*

†JUSTICE MARSHALL, JUSTICE BLACKMUN, and JUSTICE STEVENS join Parts I and II–B of this opinion.

to avoid making contributions to his pension fund. McClendon did not realize that pursuant to applicable regulations, see 29 CFR § 2530.200b–4 (1990) (break-in-service regulation), he had already been credited with sufficient service to vest his pension under the plan's 10-year requirement. McClendon sought compensatory and punitive damages under various tort and contract theories; he did not assert any cause of action under ERISA. After a period of discovery, the company moved for, and obtained, summary judgment on all claims. The State Court of Appeals affirmed, holding that McClendon's employment was terminable at will. 757 S. W. 2d 816 (1988).

In a 5-to-4 decision, the Texas Supreme Court reversed and remanded for trial. The majority reasoned that notwithstanding the traditional employment-at-will doctrine, public policy imposes certain limitations upon an employer's power to discharge at-will employees. Citing Tex. Rev. Civ. Stat. Ann., Art. 110B (Vernon 1988 pamphlet), and § 510 of ERISA, the majority concluded that "the state has an interest in protecting employees' interests in pension plans." 779 S. W. 2d 69, 71 (1989). As support the court noted that "[t]he very passage of ERISA demonstrates the great significance attached to income security for retirement purposes." *Ibid.* Accordingly, the court held that under Texas law a plaintiff could recover in a wrongful discharge action if he established that "the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." *Ibid.* The court noted that federal courts had held similar claims pre-empted by ERISA, but distinguished the present case on the basis that McClendon was "*not* seeking lost *pension benefits* but [was] instead seeking lost future wages, mental anguish and punitive damages as a result of the wrongful discharge." *Id.*, at 71, n. 3 (emphasis in original).

Because this issue has divided state and federal courts,* we granted certiorari, 494 U. S. 1078 (1990), and now reverse.

## II

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw* v. *Delta Air Lines, Inc.*, 463 U. S. 85, 90 (1983). "The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans." *Id.*, at 91 (citation omitted). As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and "to completely secure the rights and expectations brought into being by this landmark reform legislation." S. Rep. No. 93–127, p. 36 (1973). Prominent among these safeguards are three provisions of particular relevance to this case: § 514(a), 29 U. S. C. § 1144(a), ERISA's broad pre-emption provision; § 510, 29 U. S. C. § 1140, which proscribes interference with rights protected by ERISA; and § 502(a), 29 U. S. C. § 1132(a), a "'carefully integrated'" civil enforcement scheme that "is one of the essential tools for accomplishing the stated purposes of ERISA." *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 52, 54 (1987).

We must decide whether these provisions, singly or in combination, pre-empt the cause of action at issue in this case. "[T]he question whether a certain state action is pre-

---

*See, *e. g.*, *Fitzgerald* v. *Codex Corp.*, 882 F. 2d 586 (CA1 1989) (ERISA pre-empts state wrongful discharge actions premised on employer interference with the attainment of rights under employee benefit plans); *Pane* v. *RCA Corp.*, 868 F. 2d 631 (CA3 1989) (same); *Sorosky* v. *Burroughs Corp.*, 826 F. 2d 794 (CA9 1987) (same). Accord, *Conaway* v. *Eastern Associated Coal Corp.*, 178 W. Va. 164, 358 S. E. 2d 423 (1986). Contra, *K-Mart Corp.* v. *Ponsock*, 103 Nev. 39, 732 P. 2d 1364 (1987); *Hovey* v. *Lutheran Medical Center*, 516 F. Supp. 554 (EDNY 1981); *Savodnik* v. *Korvettes, Inc.*, 488 F. Supp. 822 (EDNY 1980).

empted by federal law is one of congressional intent. "The purpose of Congress is the ultimate touchstone.'" *Allis-Chalmers Corp.* v. *Lueck*, 471 U. S. 202, 208 (1985) (internal quotation marks omitted) (quoting *Malone* v. *White Motor Corp.*, 435 U. S. 497, 504 (1978)). To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute. See *FMC Corp.* v. *Holliday*, *ante*, at 56 (citing *Shaw*, *supra*, at 95). Regardless of the avenue we follow—whether explicit or implied preemption—this state-law cause of action cannot be sustained.

## A

Where, as here, Congress has expressly included a broadly worded pre-emption provision in a comprehensive statute such as ERISA, our task of discerning congressional intent is considerably simplified. In § 514(a) of ERISA, as set forth in 29 U. S. C. § 1144(a), Congress provided:

> "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

"The pre-emption clause is conspicuous for its breadth." *FMC Corp.*, *ante*, at 58. Its "deliberately expansive" language was "designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life*, *supra*, at 46 (quoting *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U. S. 504, 523 (1981)). The key to § 514(a) is found in the words "relate to." Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause "applicable only to state laws relating to the specific subjects covered by ERISA." *Shaw*, *supra*, at 98. Moreover, to underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in de-

fining the "State law" that would be pre-empted. Such laws include "all laws, decisions, rules, regulations, or other State action having the effect of law." § 514(c)(1), 29 U. S. C. § 1144(c)(1).

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw, supra*, at 96–97. Under this "broad common-sense meaning," a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. *Pilot Life, supra*, at 47. See also *Alessi* v. *Raybestos-Manhattan, Inc., supra*, at 525. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements. *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U. S. 724, 739 (1985).

Notwithstanding its breadth, we have recognized limits to ERISA's pre-emption clause. In *Mackey* v. *Lanier Collection Agency & Service, Inc.*, 486 U. S. 825 (1988), the Court held that ERISA did not pre-empt a State's general garnishment statute, even though it was applied to collect judgments against plan participants. *Id.*, at 841. The fact that collection might burden the administration of a plan did not, by itself, compel pre-emption. Moreover, under the plain language of § 514(a) the Court has held that only state laws that relate to benefit *plans* are pre-empted. *Fort Halifax Packing Co.* v. *Coyne*, 482 U. S. 1, 23 (1987). Thus, even though a state law required payment of severance benefits, which would normally fall within the purview of ERISA, it was not pre-empted because the statute did not require the establishment or maintenance of an ongoing plan. *Id.*, at 12.

Neither of these limitations is applicable to this case. We are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan. Nor is the cost of defending this lawsuit a mere administrative burden. Here, the existence of a pension plan is a critical factor in establishing

liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension *plan* itself.

We have no difficulty in concluding that the cause of action which the Texas Supreme Court recognized here—a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund—"relate[s] to" an ERISA-covered plan within the meaning of § 514(a), and is therefore pre-empted.

"[W]e have virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted under § 514(a)." *Mackey, supra,* at 829. In *Mackey* the statute's express reference to ERISA plans established that it was so designed; consequently, it was pre-empted. The facts here are slightly different but the principle is the same: The Texas cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan. In the words of the Texas court, the cause of action "allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." 779 S. W. 2d, at 71. Thus, in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment. Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s] to" an ERISA plan.

McClendon argues that the pension plan is irrelevant to the Texas cause of action because all that is at issue is the employer's improper motive to avoid its pension obligations. The argument misses the point, which is that under the Texas court's analysis there simply is *no* cause of action if there is no plan.

Similarly unavailing is McClendon's argument that § 514(a) is limited by the narrower language of § 514(c)(2), as set forth in 29 U. S. C. § 1144(c)(2), which provides:

> "The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."

McClendon argues that § 514(c)(2)'s limiting language causes § 514(a) to pre-empt only those state laws that affect plan terms, conditions, or administration. Since the cause of action recognized by the Texas court does not focus on those items but rather on the employer's termination decision, McClendon claims that there can be no pre-emption here.

The flaw in this argument is that it misreads § 514(c)(2) and consequently misapprehends its purpose. The ERISA definition of "State" is found in § 3(10), which defines the term as "any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, and the Canal Zone." 29 U. S. C. § 1002(10). Section 514(c)(2) expands, rather than restricts, that definition for pre-emption purposes in order to *"include"* state agencies and instrumentalities whose actions might not otherwise be considered state law. Had Congress intended to restrict ERISA's pre-emptive effect to state laws purporting to regulate plan terms and conditions, it surely would not have done so by placing the restriction in an adjunct definition section while using the broad phrase "relate to" in the pre-emption section itself. Moreover, if § 514(a) were construed as McClendon urges, the "relate to" language would be superfluous — Congress need only have said that "all" state laws would be pre-empted. Moreover, our precedents foreclose this argument. In *Mackey* the Court held that ERISA pre-empted a Georgia garnishment statute that *excluded* from garnishment ERISA plan benefits. *Mackey, supra,* at 828, and n. 2, 829. Such a law clearly did not regulate the

terms or conditions of ERISA-covered plans, and yet we found pre-emption. *Mackey* demonstrates that § 514(a) cannot be read so restrictively.

The conclusion that the cause of action in this case is preempted by § 514(a) is supported by our understanding of the purposes of that provision. Section 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries. *FMC Corp., ante,* at 60 (citing *Fort Halifax,* 482 U. S., at 10–11); *Shaw,* 463 U. S., at 105, and n. 25. Allowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through § 514(a). Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement.

## B

Even if there were no express pre-emption in this case, the Texas cause of action would be pre-empted because it conflicts directly with an ERISA cause of action. McClendon's claim falls squarely within the ambit of ERISA § 510, which provides:

> "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . *or for the purpose of interfering with the attain-*

*ment of any right to which such participant may become entitled* under the plan . . . ." 29 U. S. C. § 1140 (emphasis added).

By its terms § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed this section as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits. S. Rep. No. 93–127, pp. 35–36 (1973); H. R. Rep. No. 93–533, p. 17 (1973). We have no doubt that this claim is prototypical of the kind Congress intended to cover under § 510.

"[T]he mere existence of a federal regulatory or enforcement scheme," however, even a considerably detailed one, "does not by itself imply pre-emption of state remedies." *English* v. *General Electric Co.*, 496 U. S. 72, 87 (1990). Accordingly, "'we must look for special features warranting pre-emption.'" *Ibid.* (quoting *Hillsborough County* v. *Automated Medical Laboratories, Inc.*, 471 U. S. 707, 719 (1985)).

Of particular relevance in this inquiry is § 502(a) — ERISA's civil enforcement mechanism. That section, as set forth in 29 U. S. C. §§ 1132(a)(3), (e), provides in pertinent part:

"A civil action may be brought —

"(3) by a participant . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

"(e) (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have *exclusive jurisdiction* of civil actions under this subchapter brought by . . . a participant." (Emphasis added.)

In *Pilot Life* we examined this section at some length and explained that Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510:

> "[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" 481 U. S., at 54 (quoting *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134, 146 (1985)).

It is clear to us that the exclusive remedy provided by § 502(a) is precisely the kind of "'special featur[e]'" that "'warrant[s] pre-emption'" in this case. *English, supra*, at 87; see also *Automated Medical, supra*, at 719. As we explained in *Pilot Life*, ERISA's legislative history makes clear that "the pre-emptive force of § 502(a) was modeled on the exclusive remedy provided by § 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U. S. C. § 185." 481 U. S., at 52; *id.*, at 54–55 (citing H. R. Conf. Rep. No. 93–1280, p. 327 (1974)). "Congress was well aware that the powerful pre-emptive force of § 301 of the LMRA displaced" all state-law claims, "even when the state action purported to authorize a remedy unavailable under the federal provision." *Pilot Life, supra*, at 55. In *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U. S. 58 (1987), we again

drew upon the parallel between § 502(a) and § 301 of the LMRA to support our conclusion that the pre-emptive effect of § 502(a) was so complete that an ERISA pre-emption defense provides a sufficient basis for removal of a cause of action to the federal forum notwithstanding the traditional limitation imposed by the "well-pleaded complaint" rule. *Id.*, at 64–67.

We rely on this same evidence in concluding that the requirements of conflict pre-emption are satisfied in this case. Unquestionably, the Texas cause of action purports to provide a remedy for the violation of a right expressly guaranteed by § 510 and exclusively enforced by § 502(a). Accordingly we hold that "'[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected" by § 510 of ERISA, "due regard for the federal enactment requires that state jurisdiction must yield.'" Cf. *Lingle* v. *Norge Division of Magic Chef, Inc.*, 486 U. S. 399, 409, n. 8 (1988).

The preceding discussion also responds to the Texas court's attempt to distinguish this case as not one within ERISA's purview. Not only is § 502(a) the exclusive remedy for vindicating § 510-protected rights, but there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek "pension benefits." It is clear that the relief requested here is well within the power of federal courts to provide. Consequently, it is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits.

The judgment of the Texas Supreme Court is reversed.

*It is so ordered.*