Sears v. Meadows 










Withdrawn 1-27-93





IN THE
TENTH COURT OF APPEALS
 

No. 10-91-233-CV

     SEARS, ROEBUCK & CO., ET AL.,
                                                                                              Appellants
     v.

     LAWRENCE E. MEADOWS,
                                                                                              Appellee
 

From the 82nd District Court
Falls County, Texas
Trial Court # 29,599
                                                                                                    

O P I N I O N
                                                                                                    

      In this appeal, we determine that a suit brought by Lawrence E. Meadows against Sears,
Roebuck & Co. and Glenn Stranahan, an employee of Sears, arising out of Meadows employment,
is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") See 29
U.S.C.A. §§ 1001-1461 (West 1985 & Supp. 1992). We will reverse the judgment and remand
the cause with instructions that it be dismissed.
      Meadows's Fifth Amended Original Petition alleged that: he had been employed by Sears
since 1956; in 1986 he was fraudulently induced to give up his position as an Area Department
Manager at the Hancock Center store in Austin and take a sales clerk's position paying
substantially less; he was wrongfully forced to retire in 1987 under a "Unit Closing Severance
Allowance Plan" offered by Sears to induce early retirement; and a release that he signed in
connection with the early retirement program should be rescinded, was without consideration, was
against public policy, was obtained by Sears under duress, coercion, and undue influence, was not
the proper release for the program under which he retired, was induced by the same fraud that
induced him to change positions, and was not read to or by him. He further alleged that Sears
breached its oral contract of employment with him, that he relied on Sears's policy not to
terminate employees except for good cause, that Sears breached a duty of good faith and fair
dealing, and that it intentionally inflicted emotional distress upon him. He asked for actual
damages, punitive damages, and attorneys fees.
      Sears pled that Meadows executed the release as part of "The Unit Closing Severance
Allowance Plan for Timecard Regular Employees," a plan subject to and regulated by ERISA, that
the release stood as a bar to all of Meadows's causes of action, that Meadows ratified the release
by continuing to accept benefits under the Plan and in failing to tender the benefits back to Sears
as a condition precedent to his claim for rescission of the release, and that Meadows's claims are
preempted by ERISA.
      By the release, signed on June 23, 1987, Meadows released Sears from "any and all actions,
causes of action, damages or claims of damage of every character whatsoever" by reason of his
employment. Thus, Meadows had no claim against Sears unless he could avoid the effect of the
release.
      The jury found: (1) that Sears failed to disclose to Meadows that there was no
recommendation that he be fired, demoted, or disciplined, and that the failure to do so was fraud;
(2) that Sears and Meadows agreed that he would be demoted and that Sears would not terminate
his employment; (3) that the representation of Sears that the Release was only a paper pertaining
to his retirement that must be signed to obtain benefits under the Plan constituted fraud; (4) that
Sears and its employees had an agreement that Sears would treat its employees with "good faith
and fair dealings"; (5) that Sears breached the agreement; and (6) that Sears acted with malice
toward Meadows. The jury failed to find that Meadows and Sears agreed that he would receive
severance pay and retirement benefits in exchange for his agreement to retire or that they agreed
to the terms of the Release. The jury awarded damages of $221,050 for "loss of salary as Area
Sales Manager from January 1, 1987, to January 1, 1997." It further awarded damages of
$125,000 for mental anguish in the past and $250,000 for punitive damages. 
      In the judgment the court found that there was no consideration for the Release, that Meadows
received no benefit from it, and that the jury's answers on the questions about fraud "vitiate[s] the
General Waiver and Release and all matters tainted by the fraud." After disregarding the jury's
finding that Sears and Meadows agreed that he would be demoted and that Sears would not
terminate his employment, the court on August 12, 1991, entered a judgment against Sears for
$596,050. Because no questions were asked of the jury about the acts of Glenn Stranahan, no
judgment was entered against him.
      On September 5, 1991, Meadows filed a "tender and deposit" with the court, accompanied
by an affidavit of the foreman of the jury, in which he alleged that he had been paid the sum of
$10,784.80 by Sears at the time of his retirement. He further alleged that the jury had determined
his damages for loss of salary to be $231,750 and deducted the sum of $10,700 (presumably
ignoring the $84.80) to arrive at the award of $220,050. He stated, "I am now depositing and
tendering into the Registry of the Court the sum of $84.80, which when taken with the sum of
$10,700 that was deducted by the jury, represents the entire sum of $10,784.80 that was paid to
me at the time of my retirement."
      The leading authority on the question of ERISA preemption is Ingersoll-Rand Company v.
McClendon, ——— U.S. ———, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), where the Supreme
Court held that an employee's suit for wrongful discharge, based on the contention that he was
discharged only to avoid the vesting of his benefits, was preempted by ERISA. Id., 111 S.Ct. at
482-86. The Court grounded preemption on two theories: First, that the express provisions of
the act "establish pension plan regulation as exclusively a federal concern." Id. at 482. Second,
that the claimed cause of action "conflicts directly with an ERISA cause of action"—termination
of employment for the purpose of interfering with a participant's rights under a plan—that the
Court found to be a "special feature" of the federal act that would preempt a state-law cause of
action even in the absence of an express preemption provision. Id. at 484-85. ERISA confers
exclusive jurisdiction of civil actions brought by a participant in a plan on the district courts of the
United States. 29 U.S.C.A. § 1132(a)(3), (e).
      Claims are preempted under the express provision if they "relate to" any employee benefit
plan governed by ERISA. Ingersoll-Rand, 111 S.Ct. at 482. "The pre-emption clause is
conspicuous for its breadth." Id. "State law" includes decisions having the effect of law; thus,
common-law causes of action may be preempted. Id. at 482-83. A state law may be preempted
even if the law is not specifically designed to affect an ERISA plan, or if the effect is only indirect. 
Id. at 483. Thus, the Court found that the existence of a pension plan was a critical factor in
establishing liability for the wrongful discharge under state law


 and held that the cause of action
was preempted. Id. at 483-84.
      In addition, claims may be preempted even in the absence of an express statutory provision. 
Although the mere existence of a federal regulatory or enforcement scheme—even a considerably
detailed one—does not by itself imply preemption of state remedies, "special features" of such a
scheme may warrant preemption. Id. at 485. Because ERISA specifically prohibits an employer
from discharging, fining, suspending, expelling, disciplining, or discriminating against a plan
participant for exercising any right under the provisions of a plan, or for the purpose of interfering
with the attainment of any right to which a participant may become entitled under a plan, the Court
found that a suit alleging a wrongful discharge to prevent vesting of benefits would be preempted
because the activity was regulated by a "special feature" of the federal act. Id. at 486.
      Our determination of preemption requires examination of three aspects of Meadows's claims. 
First, to prevail on any of his theories, he must set aside the Release that was part of the Plan. 
Second, he alleged that he was forced into retirement, i.e., forced to accept lesser benefits than
those to which he would have been entitled but for the "fraud." Third, any computation of
damages necessarily involves a determination of benefits that Meadows has received under "The
Unit Closing Severance Allowance Plan for Timecard Regular Employees."
      Although Meadows's claims may not specifically affect the ERISA plan, or such effect is only
indirect, we cannot escape the conclusion that his claims "relate to" an employee pension plan
regulated by ERISA. See id. at 482. Because ERISA prohibits acts with respect to an employee
that interfere with the attainment of a right to which the employee may become entitled under a
plan, Meadows's claims that Sears (1) defrauded him into accepting a lesser position, (2)
"wrongfully forced [him] into retirement," and (3) fraudulently represented that the Release was
only a paper pertaining to his retirement that must be signed to obtain benefits under the Plan
would be preempted under the federal statute. See id. at 484-86. Thus, a federal district court
has exclusive jurisdiction of his claims. See id. at 485.
      Meadows strongly contends that his claims are not preempted because the ERISA plan "was
not involved in this lawsuit" and because the suit was "tried only and solely on the basis of
common-law fraud." This assertion was answered in Ingersoll-Rand when the Supreme Court
said, "[I]t is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery
of pension benefits." See id. at 486.
      We sustain Sears's point one, reverse the judgment, and remand the cause to the trial court
with instructions that Meadows's claims be dismissed for want of jurisdiction. Because of our
disposition of point one, we do not reach Sears's remaining points.
 
                                                                                 PER CURIAM


Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded with instructions
Opinion delivered and filed October 30, 1992
Do not publish
(WITHDRAWN 1-26-93)