**Eric K. WELLES, Plaintiff–Appellant,**

v.

**BRACH & BROCK CONFECTIONS, INC., a Delaware corporation, Defendant–Appellee.**

**No. 00–4240.**

United States Court of Appeals, Seventh Circuit.

Argued May 15, 2001.

Decided July 18, 2001.

Before RIPPLE, MANION, DIANE P. WOOD, Circuit Judges.

### ORDER

Eric Welles worked as the Vice President of Regional Sales at Brach & Brock Confection, Inc., until Brach laid him off in July 1999. While Brach had offered Welles a severance package representing approximately 32 weeks of salary, Welles rejected the offer, instead claiming a right to a year of severance pay based on a letter Brach had mailed to Welles when it offered him the Regional Sales position. Based on this letter, Welles sued Brach under both common law contract principles and ERISA for $150,000 in severance pay.

The district court concluded that Welles's contract claim was preempted by ERISA and that the letter on which Welles relied to support his claim to severance benefits did not constitute an ERISA plan, and therefore he also could not recover under ERISA. Additionally, the district court rejected the equitable estoppel theory Welles proffered as an alternative rationale entitling him to one year of severance benefits. We affirm.

### I.

In May or June 1998, a recruiter approached Eric Welles about a possible employment opportunity with Brach & Brock Confection. After Welles expressed interest in the position, he met with George Mullinex, Brach's Senior Vice President of Sales and Marketing. The meeting apparently went well, because on July 2, 1998, Brach mailed Welles a letter, signed by Mullinex, in which Brach offered Welles the position of Vice President–Regional Sales: Central. The letter expressly stated that it was "meant to summarize the terms of the offer about this opportunity," and then continued to discuss Welles's salary, right to a car allowance, life and dental insurance, and participation in medical and disability plans, as well as a 401K plan. Significantly for purposes of this appeal, the letter further provided: "In the unlikely event your employment is terminated for other than cause, you will be eligible for 12 months' severance." The letter also directed Welles to contact Brach's Corporate Human Resources Department for details about "our total benefits package for you." The letter then concluded by stating that "[t]hese benefits provided may be modified from time to time," and that "[n]othing in this offer alters the employment-at-will relationship that exists between Brach & Brock and all of its employees. This offer is not to be construed as contractual in nature."

Welles accepted the Vice President position, and began working for Brach on August 24, 1998 at an annual salary of $150,000. Shortly after Welles's arrival, Brach's human resources department sent him summaries of the various benefit plans, such as the vacation, 401(k) and health insurance plan. According to Welles, he never received a copy of a severance plan. At the time that Welles started with Brach, Brach had in effect a severance plan entitled "Special Severance Policy." Under that plan, employees were entitled to one year of severance pay, although the plan specifically provided that Brach could alter the benefits under the severance plan. Brach did exactly that on June 17, 1999, informing "All Salaried Employees" via e-mail that "All previous severance plans have been revoked as of the effective date." Attached to the e-mail was a copy of the "New Salaried Severance Plan of Brach's Confections, Inc." The new severance plan, as it would be applied to Welles, provided maximum severance benefits of up to 32 weeks' salary, which would be reduced in half once Welles obtained other employment. The new severance plan also required employees to sign a release in order to obtain the specified benefits.

Just eight days later, Brach laid Welles off as part of a general reduction in Brach's workforce. Pursuant to the terms of the new severance plan, Brach offered Welles severance pay of 32 weeks' salary, or approximately $92,300, with the condition that if Welles found new employment before the benefits expired, he would be paid a lump sum equal to one-half of the still outstanding benefits. Brach's severance offer, however, also required Welles to execute a "Separation Agreement & General Release." Welles refused to sign the agreement and release, claiming that he was entitled to a full year's pay of $150,000 based on the terms of the July 2, 1998 letter from Senior VP Mullinex.

Welles accepted a new job as Zone Director for Guinness Bass Import Company, at a yearly salary of $130,000 and a bonus of $20,000. Afterward, on September 7, 1999, Welles sued Brach for $150,000 of severance benefits.

In his complaint, Welles alleged that he was entitled to $150,000 based on the July 2, 1998 letter under common law contract principles. The district court held that Welles's common law contract claim for severance benefits was preempted by ERISA because it was related to an ERISA severance benefits plan. However, the district court granted Welles leave to file an amended complaint. In his amended complaint, Welles once more alleged a common law contract claim, but also added a second count claiming entitlement to $150,000 under ERISA. The district court, after noting that it had already held that the contract claim alleged in Count I was preempted, held that the July 2, 1998 letter did not constitute an ERISA plan and therefore it dismissed that count, while once again granting Welles leave to amend his complaint. Welles filed a second amended complaint, which consisted of three counts: Count I and II repeated the previously alleged common law contract and ERISA claims, but in Count III Welles alleged entitlement to $150,000 based on a new theory—equitable estoppel. The district court rejected Welles's estoppel theory, dismissing his final complaint. Welles appeals.

## II.

On appeal, Welles first argues that the district court erred in holding that his common law contract claim was preempted by ERISA. A state law claim is preempted by ERISA if an employer maintained an ERISA plan and the plaintiff's claim "relates to" that plan. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133,

139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Welles does not dispute that the original "Special Severance Policy" and the new "Salaried Severance Plan" constituted ERISA plans maintained by Brach. Rather, Welles contends that his claim does not "relate to" those plans because the July 2, 1998 letter created an independent and individualized severance plan that he had negotiated with Brach and therefore he was not covered by the ERISA severance plans.

While Welles's contract claim is not based on the ERISA-regulated original "Special Severance Policy" or the new "Salaried Severance Plan," that does not mean that his claim is not "related to" those plans. Rather, the Supreme Court has defined "relates to" expansively holding that a claim "relates to" an employee benefit plan if "it has a connection with or reference to such a plan." *Id.* In this case, Welles's contract claim is based on the July 2, 1998 letter and that letter expressly stated that it was merely "summarizing" the employment benefits, one of which was severance benefits. In fact, the letter's summary of the severance benefits—eligibility for 12 months' severance—conformed to the actual terms of the original "Special Severance Policy" in effect at Brach at that time, demonstrating a connection between the letter and the severance plan. Moreover, the letter referred Welles to the Human Resources Department to obtain details on the benefits, which also illustrates that the terms set forth in the letter had "a connection to" or "a reference to" the original "Special Severance Policy" and new "Salaried Severance Plan" offered by Brach. The letter on which Welles relies to establish his common law contract claim expressly states it is a summary of the benefits. In fact, it summarized the severance benefits currently offered, and noted that the Human Resources department would detail the benefits. We therefore conclude that

Welles's contract claim "relates to" Brach's ERISA severance plan and is thus preempted by ERISA.

Moreover, even were we to conclude that Welles's contract claim was not preempted by ERISA, Welles would lose on that claim because the July 2, 1998 letter expressly provides that "[t]hese benefits provided may be modified from time to time." As noted above, Brach in fact modified the severance benefits on June 17, 1999 when it adopted its "New Salaried Severance Plan of Brach's Confections, Inc." That new plan further specifically provided that "[a]ll previous severance plans have been revoked as of the effective date." Thus, even under the terms of the alleged contract (i.e. the July 2, 1998 letter), at most Welles's right to one year of severance pay was conditional and could be modified at any time. The alleged contractual rights were modified, reducing Welles's severance to 32 weeks of salary, which is exactly what Brach offered Welles following his layoff. Therefore, even if the July 2, 1998 letter created a contractual right to severance benefits, Brach conformed with its obligations under that alleged contract.

■ Welles argues alternatively that even if his common law contract claim was preempted by ERISA, the July 2, 1998 letter constituted an ERISA plan, and that Brach violated ERISA by failing to pay him 12 months' salary as severance pay. To create a plan within the meaning of ERISA, a promise of benefits must require the establishment and maintenance of an "ongoing administrative scheme." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1035 (7th Cir.1998). In this case, under Welles's own theory, the July 2, 1998 letter allegedly created a right to a one-time lump sum payment of $150,000. A one-time payment does not constitute a plan within the meaning of ERISA because

there is no need for ongoing administration of the "plan." *See Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir.1997). Therefore, Brach also cannot maintain a claim under ERISA.[1]

Finally, Welles argues that he is entitled to $150,000 in severance pay based on a theory of equitable estoppel. Specifically, Welles claims that

Brach's failure to disclose that the severance provision contained in his Offer Letter was subject to a plan that could, without his consent, reduce, eliminate, or condition the benefits provided by that provision and caused him to reasonably believe that the Offer Letter constituted a promise that could not be changed without his consent to pay him 12 months' severance if his employment terminated for other than cause.

It is true that at this stage we must accept as true Welles's allegation that Brach failed to provide Welles with a copy of its "Special Severance Policy" as required by ERISA. But even so, it was not reasonable for Welles to believe that "the Offer Letter constituted a promise that could not be changed without his consent," because the Offer Letter itself expressly provided "[t]hese benefits may be modified from time to time." To succeed based on equitable estoppel under ERISA, any reliance must be reasonable and since it wasn't in this case, Welles loses on this theory as well. *See Trustmark Life Ins. Co. v. University of Chicago Hosp.*, 207 F.3d 876, 882 (7th Cir.2000) (the elements of estoppel in the ERISA context require, among other things, that the plaintiff reasonably relied on the misrepresentation).

---

1. Of course, this discussion assumes that the July 2, 1998 letter created the right to $150,000 in severance pay, but as explained above, that right was not absolute, and could be (and in fact was) modified by Brach.

### III.

In sum, while the July 2, 1998 letter in which Brach offered Welles a position as a Vice President of Sales and Marketing stated that Welles was eligible for 12 months of severance benefits, that same letter made clear that those benefits could be modified from time to time. On June 17, 1999, Brach modified the severance plan, terminating the earlier 12–month benefit package. Therefore, Welles no longer had a right to a year's pay of $150,000, whether based on a common law contract theory, ERISA or equitable estoppel. We affirm.