{¶ 17} I respectfully dissent from the majority's conclusion that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA") preempts Bennett's state law claims in this action. The gravamen of Bennett's case is that the Banks breached the terms and duties assumed under certain custodial agreements causing him to suffer damage. After reviewing the record and applicable law, I simply cannot agree that ERISA preempts Bennett's claims due to the fortuitous fact that the custodial accounts in this case just happened to hold funds of certain ERISA plans.
 {¶ 18} The Banks allege[4] that 29 U.S.C. § 1144(A) preempts Bennett's claims through the following language: "the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C.S 1003(a)] and not exempt under section 4(b) [29 U.S.C.S § 1003(b)] * * *." A cursory review of the breadth of federal and state law dealing with this issue reveals that courts have and continue to struggle with applying the phrase "relate to" in defining the scope of this preemption. Indeed, the United States Supreme Court has felt compelled to go beyond the "unhelpful text and difficulty of defining its key terms, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."). New York State Conference of Blue Cross Blue Shield Plans v. Travelers Ins. Co. (1995), 514 U.S. 645, 656.
 {¶ 19} Following that lead, I begin by noting "that in passing § 514(a), Congress intended `to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government * * * [and to prevent] the potential for conflict in substantive law * * * requiring the tailoring of plans and employer conduct to the pecularities of the law of each jurisdiction.'" Id. quoting, Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142.[5]
Allowing Bennett's state law claims to proceed will not endanger the goal of a uniform body of benefits law since his claims have nothing whatsoever to do with the administration of a benefits plan.
 {¶ 20} The imprecise nature and seemingly infinite scope of the "relate to" phrase underscores the importance of mooring ERISA preemption to its legislative objectives. Without some point of reference, "for all practical purposes preemption would never run its course, for `really, universally, relations stop nowhere.'" Travelers, 514 U.S. at 656 [other citations omitted].
 {¶ 21} It is undisputed that the Banks are not ERISA fiduciaries.[6] It is not contended that the Banks administered the ERISA plans or exercised any discretion within the meaning of ERISA in any way. Quite simply, the Banks assumed certain contractual obligations as custodian of the funds in the accounts. Yet, the Banks seize upon the tangential fact that the particular custody agreements under our examination in this case apparently relate to accounts holding funds of certain ERISA plans for which Bennett is the sole beneficiary.
 {¶ 22} The custody agreements, however, do not, in and of themselves, relate to ERISA plans and, in fact, the agreements make no reference to ERISA at all. Rather, the custody agreements appear to be standard fill-in-the-blank forms available for the Banks' use whenever it is to act as a custodian of funds, regardless of the nature of those funds. From that, it is logical to infer that any individual or entity depositing personal funds into a custodial account and entering a like agreement with the Banks would be afforded the opportunity to pursue state law claims against the Banks for breach of contract without thought or threat of ERISA preemption. To find that ERISA preempts the very same claims advanced by Bennett here seems to accept the expansive meaning of "relate to" without placing it in the context of legislative objectives as counseled by the United States Supreme Court. New York StateConference of Blue Cross Blue Shield Plans v. Travelers Ins. Co.
(1995), 514 U.S. 645, 656.
 {¶ 23} I am further persuaded by the reasoning employed by the Ninth Circuit Court of Appeals in Geweke Ford v. St. Joseph's OmniPreferred Care Inc. (C.A.9, 1997), 130 F.3d 1355 and Arizona StateCarpenters Pension Trust Fund v. Citibank (C.A.9, 1997), 125 F.3d 715. I find both Geweke and Arizona State Carpenters factually analogous to the circumstances we are addressing here. In Arizona State Carpenters, the Ninth Circuit cogently reasoned that "the key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee * * *
 {¶ 24} "But a plan doesn't purport to regulate those relationships where a plan operates just like any other commercial entity — for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from who it leases office space." Arizona State Carpenters, 125 F.2d at 724 [other citations omitted]. Consequently, the court in Arizona State Carpenters
concluded that ERISA did not preempt claims against Citibank for breach of contract involving a custodial agreement and related state law claims since Citibank's relationship to the ERISA plan in that instance was no different than with any of its customers. The court succinctly found that the connection or relation between the state law claims and ERISA's regulation of employee benefit claims was "too `tenuous, remote, or peripheral' to trigger preemption." Id. citing Shaw, 463 U.S. at 100 n. 21.
 {¶ 25} In this case, it is quite obvious that Bennett seeks damages for the Banks' alleged breach of duty under the contract[7] and which is apparently a claim no different than the type available to any of the Banks' other customers who enter similar custody agreements. Bennett is not making a claim against the Banks for deferred compensation benefits under the terms of any ERISA plan. The total loss of funds no doubt contributed to the plan's inability to pay Bennett his benefits, but the focus here is on the Banks' alleged responsibility for how the funds were lost, not on the plan's decision not to pay benefits. Applying the law as stated above to the facts of this case, I would sustain Bennett's assignment of error and reverse and remand this matter for further proceedings.
[4] Bank of America joined in the brief and arguments submitted by Key Trust Company of Ohio, N.A.
[5] The United States Supreme Court recognizes three areas that Congress intended for ERISA preemption: (1) state laws that mandate employee benefit structures or their administration; (2) state laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; (3) state laws providing alternate enforcement mechanisms for employees to obtain ERISA plan benefits. Arizona StateCarpenters, 125 F.3d at 723.
[6] "A person or entity who performs only ministerial services or administrative functions within a framework of policies, rules and procedures established by others is not an ERISA fiduciary." Arizona StateCarpenters Pension Trust Fund v. Citibank, 125 U.S. 715, 721-722.
[7] It is worth noting that the Banks' briefs on appeal dispute any contractual breach citing excerpts from the custody agreements to support their position that the agreements "contractually bound" them to follow the direction of the Cashel defendants. And that is the point of this case: whether the Banks' breached contractual obligations. While the Banks argue that the breach of contract is intricately tied to a determination of whether the Cashel defendant's engaged in breaches of fiduciary duty under ERISA, I do not see this. In other words, whether or not the Cashel defendants independently breached fiduciary obligations under ERISA really has no bearing on whether the Banks breached any duties they assumed under the custody agreements.