UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT


No. 07-1527


CITY OF FALLS CHURCH, VIRGINIA,

                                      Plaintiff - Appellant,

      versus


FAIRFAX COUNTY WATER AUTHORITY,

                                      Defendant - Appellee.


Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:07-cv-00174-CMH)


Argued:  January 31, 2008          Decided:  April 4, 2008


Before MICHAEL, GREGORY, and DUNCAN, Circuit Judges.


Affirmed by unpublished opinion.  Judge Duncan wrote the opinion,
in which Judge Michael and Judge Gregory joined.


**ARGUED:** Philip Louis Chabot, Jr., MCCARTHY, SWEENEY & HARKAWAY,
Washington, D.C., for Appellant.  Stuart A. Raphael, HUNTON &
WILLIAMS, L.L.P., McLean, Virginia, for Appellee.  **ON BRIEF:** Jill
Marie Dennis, HUNTON & WILLIAMS, L.L.P., McLean, Virginia, for
Appellee.


Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

The City of Falls Church ("Falls Church"), appellant in this action, contends that the federal government effectively granted it the exclusive right to provide water service to customers in certain portions of Fairfax County, Virginia, through the passage of four Acts of Congress in 1859, 1926, 1947, and 1996. The issue presented in this case is whether the provision of water service in the affected areas by appellee Fairfax County Water Authority ("Fairfax Water"), though consistent with Virginia law, was preempted by these four Acts. The district court held that it was not and granted Fairfax Water's motion to dismiss. For the following reasons, we affirm.

I.

In 1957, the Board of Supervisors of Fairfax County created Fairfax Water. Under Virginia law, Fairfax Water has the power to operate a water system "within, outside, or partly within and partly outside one or more of the localities which created the authority . . . ." Va. Code Ann. § 15.2-5114(6). However, under Virginia law, Falls Church, a political subdivision of the Commonwealth of Virginia, also maintains a right to provide water service both within and outside its own territorial limits. Va. Const. art. VII, § 8 (1971); Va. Code Ann. § 15.2-2143; Charter, City of Falls Church § 2.03 (1998 & Supp. 2003). The combined

2

effect of these provisions creates areas of overlapping authority, or "interface areas," where water service might legitimately be provided by either Fairfax Water or Falls Church.

For thirty years, from 1959 to 1989, Fairfax Water and Falls Church operated under a contractual agreement in which the two entities delineated portions of interface areas to be served by Fairfax Water or Falls Church, but not both. When the agreement expired in 1989, these areas were ostensibly opened up for competition between the parties. In 2005, Fairfax Water informed Falls Church that it intended to serve new developments in the interface areas.

In February 2007, shortly after learning that Fairfax Water had moved ahead with its plan by offering to provide water service to a planned office complex within one of the interface areas, Falls Church initiated this action. Falls Church asserted that the extension of Fairfax Water's service into these areas would frustrate the purposes embodied in a series of four federal Acts related to the provision of water service from the federally-owned and operated Washington Aqueduct to Falls Church and other Aqueduct customers.[1]

---

[1]The Washington Aqueduct includes various federally-owned facilities, including "the dams, intake works, conduits, and pump stations that capture and transport raw water from the Potomac River to the Dalecarlia Reservoir; . . . the infrastructure and appurtenances used to treat water taken from the Potomac River to potable standards; and . . . related water distribution facilities." Safe Drinking Water Act Amendments of 1996, Pub. L.

3

Three of the Acts in issue set forth the basic framework under which water is provided to Washington Aqueduct customers. The first Act, passed in 1859, authorized the provision of public drinking water to the District of Columbia via the Washington Aqueduct. Act of March 3, 1859, ch. 84, 11 Stat. 435 (the "1859 Act"). The second Act, passed in 1926, authorized the Secretary of War, "in his discretion and subject to the approval of the Chief of Engineers, upon the request of the Board of Supervisors of Arlington County, Virginia, to permit the delivery of water" from the Washington Aqueduct to Arlington County. Act of April 14, 1926, ch. 140, 44 Stat. 251 (the "1926 Act"). On similar terms, the third Act, passed in 1947, expanded the permissible service area of the Washington Aqueduct to include Falls Church. Act of June 26, 1947, ch. 149, § 1, Pub. L. No. 80-118, 61 Stat. 181 (the "1947 Act").[2] Falls Church began receiving water from the

---

No. 104-182, 110 Stat. 1613.

[2] "[T]he Secretary of War . . . is hereby authorized in his discretion, upon request of the town council of the town of Falls Church, Fairfax County, Virginia, or any other competent State or local authority in the Washington metropolitan area in Virginia, to permit the delivery of water" from the Washington Aqueduct to Falls Church "for the purpose of supplying water for the use of said town and such adjacent areas as are now or shall hereafter be served by the water system of said town; or to any other competent State or local authority in said metropolitan area in Virginia." Id. The Act further provided "[t]hat the Secretary of War, directly or upon the request of the Board of Commissioners, may revoke at any time any permit for the use of said water that may have been granted." Id.

Washington Aqueduct in 1950 and currently obtains its full water requirements from the Aqueduct.[3]

The last of the four Acts, passed in 1996, authorized the transfer of the Washington Aqueduct, within three years, "to a non-Federal, public or private entity."  Act of Aug. 6, 1996, § 306(d)(1), Pub. L. 104-182, 110 Stat. 1686 (the "1996 Act").  The Act also authorized the Secretary of the Army to borrow such amounts in fiscal years 1997, 1998, and 1999 as would be necessary to fund capital improvements to the Washington Aqueduct to ensure its continued operation until the transfer took place.  Id. § 306(e).  This borrowing authority would be effective "only after the Chief of Engineers [had] entered into contracts with each customer under which the customer [committed] to repay a pro rata share (based on water purchase) of the principal and interest." Id. § 306(e)(2)(A).[4]  In 1997, Falls Church entered into a Water Sales Agreement with the Secretary of the Army under which Falls

---

[3]In 1950, Falls Church entered into a water supply agreement with Arlington County, which receives water from the Washington Aqueduct pursuant to the 1926 Act, for the sale and delivery of water from Arlington County to Falls Church, pursuant to the 1947 Act.  That agreement remains in effect to this day.  In 1961, Falls Church built a water line that allowed it to connect to the federal government's water filtration plant, and entered into a separate water supply agreement to receive some of its water directly from the federal government.

[4]The term "customer" in the Act referred to three entities then receiving water from the Washington Aqueduct: the District of Columbia; Arlington County, Virginia; and Falls Church.  Id. § 306(a)(1).

Church agreed to pay its pro rata share of the principal and interest on loans advanced pursuant to § 306 of the 1996 Act. The Agreement also included terms for offsetting the risk of default by Falls Church, as required by the Act. J.A. 170; see id. § 306(e)(2)(C).[5] The Secretary of the Army took out three loans pursuant to § 306, issuing promissory notes to the U.S. Treasury in July 1997, October 1997, and October 1998, totaling $75 million. When the transfer of the Washington Aqueduct was not consummated within the three-year time frame contemplated in the 1996 Act, however, § 306 was repealed, leaving the Washington Aqueduct the property of the United States. Act of Aug. 21, 2002, Pub. L. No. 107-217, § 6, 116 Stat. 1325 (2002) (repealing Pub. L. 104-182, § 306).

In the district court, Falls Church argued that Fairfax Water's proposed water-service provision within interface areas would interfere with the federal program and activity authorized by the above-referenced Acts of Congress, and that such action was therefore preempted by the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2. Falls Church asked the court to declare unlawful and enjoin Fairfax Water's efforts to

---

[5]Under the Agreement, Falls Church committed to pay special rates designed to take into account "the financial markets' measure of the cost of the risk of default[.]" J.A. 170. As explained infra, this undercuts Falls Church's argument that competition with Fairfax Water might jeopardize its ability to meet its obligations to the United States under the Agreement.

6

provide water and water utility service to customers within affected interface areas. The district court rejected Falls Church's preemption claim and dismissed the case. This appeal followed.

## II.

We review de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, accepting as true all well-pleaded allegations and reviewing the complaint in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).

### A.

Federal law may preempt state law through express statutory language, where Congress evinces an intent to occupy an entire field of regulation, or where state law actually conflicts with federal law. Michigan Canners and Freezers Ass'n, Inc. v. Agric. Marketing & Bargaining Bd., 467 U.S. 461, 469 (1984). Only the last of these types of preemption--conflict preemption--is at issue here.

An actual conflict between state and federal law arises "when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (internal quotations and citation omitted). Falls Church does not argue that compliance with state and federal law would be impossible on this record. Rather, its contentions appear to be based on the existence of "obstacle preemption." Falls Church asserts that Fairfax Water's attempts to provide water service to customers in interface areas would "interfere with the implied, but nonetheless obvious purposes and objectives of Congress in establishing the Washington Aqueduct." Appellant Br. at 19. It argues that "Congress could not have been indifferent to" Fairfax Water serving customers that would have otherwise been served by Falls Church. Id. at 20. By serving these customers, according to Falls Church, Fairfax Water would stand as an obstacle to the most effective economic use of the Washington Aqueduct, by consequently causing an increase in the price paid by the federal government for water in and near the District of Columbia, and by harming the ability of the Washington Aqueduct's customers--the District of Columbia, Arlington County, and Falls Church--to meet their financial obligations under contracts entered into pursuant to the 1996 Act. Such outcomes, Falls Church concludes, would frustrate

Congress's intent to have the Washington Aqueduct operate in the most efficient and financially sound manner.

B.

"The purpose of Congress is the ultimate touchstone in every preemption case." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (internal quotations and alterations omitted). In ascertaining that purpose, however, we begin our consideration with the basic premise that "Congress did not intend to displace state law." Maryland v. Louisiana, 451 U.S. 725, 746 (1981). "[A] clear and manifest purpose of preemption is always required." Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp., 485 U.S. 495, 503 (1988) (internal quotations omitted).

The presumption against preemption has particular force in the areas of public health and safety that have traditionally been regulated by the states. See Pinney v. Nokia, Inc., 402 F.3d 430, 457 (4th Cir.), cert. denied 126 S. Ct. 551 (2005). Therefore, to the customary caution with which we approach preemption challenges, we add "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 715 (1985) (internal quotations omitted); see also Pinney, 402 F.3d at 454 n.4, 457. Of particular significance here is the fact that "the provision and regulation of a healthful public water supply is at the core of

9

Virginia's police power." Shrader v. Horton, 471 F.Supp. 1236, 1242 (W.D. Va. 1979), aff'd 626 F.2d 1163 (4th Cir. 1980).

Our jurisprudence teaches that even in obstacle preemption cases, "[t]here is no federal pre-emption in vacuo, without a constitutional text or a federal statute to assert it." Isla Petroleum Corp., 485 U.S. at 503; see also Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 104 n.2 (1992). A reviewing court must "examine the explicit statutory language and the structure and purpose of the statute." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990).

Turning to the text of the statutes at issue here, we find no clear and manifest purpose to supersede Virginia's traditional authority in the area of water utility regulation. Two of the four statutes do not refer to or impact Falls Church at all. The third Act, the 1947 statute upon which Falls Church purports to rely, merely authorizes the Secretary of War "to permit the delivery of water" to Falls Church. On its face, the language is conspicuously and unequivocally permissive. Moreover, it allows for the termination of water service to Falls Church "at any time." The purpose of the 1996 Act was to encourage the sale of the Aqueduct to a non-federal entity within three years, and to finance the operation of the Aqueduct until the transfer was complete. When a transfer did not occur within three years, the statute was repealed. It cannot reasonably be inferred that Congress intended

10

to grant Falls Church an exclusive, federally-mandated water service territory in a statute that had as its core objective facilitating the federal government's departure from the water supply business.

As we have noted, the Supreme Court instructs us that "[i]n areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress made such an intention clear and manifest." Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005) (internal quotations omitted). We find no such "clear and manifest" intention in the structure and purposes of the Acts at issue here.

Unable to find support for its preemption challenge in the statute, Falls Church argues that interference with a federal scheme can nevertheless be inferred from the possibility that a loss of customers to Fairfax Water might impact its ability to meet its contractual obligations with respect to the loans incurred for capital improvements to the Aqueduct. In addition to ignoring the analytical prerequisites of conflict preemption, this argument also fails to articulate the non-speculative factual basis for relief required by Twombly. 127 S. Ct. at 1965. We note again, in this vein, that the Water Sales Agreement between Falls Church and the Secretary of the Army includes provisions protecting the federal government against the risk of default. Thus, Falls Church's

11

ability to meet its obligations was accounted for, at least to some extent, within the terms of the Agreement itself.[6]

                              III.

    For the foregoing reasons, the judgment of the district court is

                                                    AFFIRMED.

---

[6]Although not determinative of our analysis, we note as well that Falls Church maintains the option of raising rates or taxes to meet its contractual obligations to the federal government.

12