**TEMPLE UNIVERSITY CHILDREN'S MEDICAL CENTER,**

v.

**GROUP HEALTH, INC., et al.**

No. CIV.A.05–103.

United States District Court, E.D. Pennsylvania.

Jan. 25, 2006.

Howard R. Maniloff, Tabas & Rosen, P.C., Philadelphia, PA, for Temple University Children's Medical Center.

Michael H. Bernstein, Sedgwick Detert Moran & Arnold LLP, New York, NY, Anthony E. Creato, Philadelphia, PA, for Group Health, Inc.

Brian T. Must, Michael P. Robic, II, Metz Lewis, LLC, Pittsburgh, PA, for Multiplan, Inc.

## MEMORANDUM

BARTLE, Chief Judge.

Plaintiff, Temple University Children's Medical Center ("TUCMC"), has sued defendants, Group Health, Inc. ("GHI"), Multiplan, Inc. ("Multiplan"), and Transport Workers Union–New York City Transit Authority–Mabstoa Health Benefit Trust for breach of contract for refusing to pay the billed charges for medical services provided to three different patients. Multiplan has filed a cross claim against GHI for indemnity. We have diversity jurisdiction under 28 U.S.C. § 1332. Before the court are the motions of GHI and Multiplan for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### I.

Rule 56(c) permits us to grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, at 254, 106 S.Ct. 2505. We review all evidence and make all reasonable inferences from the evidence in the light most favorable to the non-movant. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir.2004). The non-moving party may not rest upon mere allegations or denials of the moving party's pleadings but must set forth specific facts showing there is a genuine issue for trial. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

### II.

This case arises out of disputed charges for medical services rendered at TUCMC to Yisroel Rosenbaum ("Rosenbaum"), Zev Kahn ("Kahn"), and Nadia Zehngut ("Zehngut"). At the time Rosenbaum and Kahn were treated at TUCMC, both were insured under group health insurance contracts issued by GHI to cover the employees and dependents of the employees of Mesivta Nachlas Yakov and the Neshoma Orchestra. Zehngut, it appears, was covered by a self-insured ERISA plan.

In 1997, GHI and Multiplan entered into an "Agreement for GHI's Access to Multiplan Inc.'s Facility Networks." The contract declares that in exchange for the payment of the access fee, GHI "shall have the right to access [Multiplan's] Contract Rates" on behalf of its insureds. If the Multiplan contract governed, GHI was required to pay 90% of the charges billed by a health care provider and pay Multiplan a fee based on the 10% savings.

At all times relevant to this action, TUCMC was a member of the Multiplan network by virtue of a "Prompt Payment

Discount Agreement" between Multiplan and the Temple University Health System of which TUCMC is a part. GHI was not a party to this agreement. Barely more than one page in length, the agreement states that Multiplan "shall reimburse Temple University Health System" in accordance with "Attachment B–5," which details the specific reimbursement for services performed by TUCMC. Under that attachment, Multiplan agrees to "reimburse [TUCMC] 90% of billed charges within thirty (30) days of receipt of claim or 100% of billed charges shall be due." Multiplan contends that despite this language, it was the consistent practice of its member providers to bill a patient's insurer directly. Indeed, in this case TUCMC did not charge Multiplan for costs and services associated with the Rosenbaum, Kahn and Zehngut surgeries and instead billed GHI.

TUCMC's first claim involves payments for surgery performed on Yisroel Rosenbaum. He was admitted to TUCMC on May 31, 2002 for anterior/posterior spinal fusion surgery and was released on June 1, 2002. During this period Rosenbaum was a beneficiary under a health insurance agreement between GHI and Mesivta Nachlas Yakov ("Mesivta Plan") and consequently was entitled to insurance coverage as provided by its terms. Under the Mesivta Plan, GHI agreed to reimburse non-participating health care providers the "allowed charge" for registered bed patients. The Plan defines "allowed charge" as the "reasonable and customary charge, as determined by GHI, for the covered services." A non-participating provider is one who does not meet the Mesivta Plan's definition of a "participating provider." It defines a participating provider as an entity that either has agreed to accept GHI's scheduled rates or has otherwise contracted with GHI for alternative rates as payment in full for covered services.

TUCMC sent GHI a bill for $113,720.87 which the latter received on September 10, 2002. Pursuant to its agreement with Multiplan, GHI accessed the Multiplan 10% discount and remitted a check to TUCMC for $101,737.95, that is 90% of the original charges less $132 for uncovered "blood storage procedures." TUCMC cashed the check without objection. Eight months later, TUCMC mailed GHI another bill for expenses arising out of the Rosenbaum surgery. TUCMC claimed the $180,656 cost of the implant had been omitted from the first bill. After researching the cost of the implant with the manufacturer, GHI concluded "reasonable and customary" charges for the implant were in the range of $15,000. GHI paid TUCMC $20,000 and sent letters both to Rosenbaum and TUCMC on July 23, 2003 explaining its determination.

TUCMC's second claim involves payment for Zev Kahn's surgery and treatment between January 10–12, 2003. At the time Kahn was hospitalized at TUCMC for anterior/posterior spinal fusion surgery, he was a beneficiary under a group health insurance contract between GHI and the Neshoma Orchestra ("Neshoma Plan"). Under the Neshoma Plan, GHI agreed to reimburse non-participating health care providers the "allowed charge" for registered bed patients. The Plan defines "allowed charge" as the "lesser" amount of five options:

(1) the negotiated rate between GHI and the Hospital or facility; (2) the negotiated rate between the Hospital or facility and any network arrangements with which GHI has an agreement; (3) the Hospital or facility's published rate for a semi-private room; (4) for out of area Hospitals and facilities, the Hospital or facility's published rate for a semi-private room, not to exceed the average

charge or GHI Participating Hospitals and skilled nursing facilities for the same services; or (5) charges.[1]

Where GHI has not determined an allowed charge for a specific service, the Neshoma Plan states that GHI will make a payment "based upon either Medicare guidelines and/or the Relative Value Scale to determine comparability between procedures." Like the Mesivta Plan, a non-participating provider is one which does not meet the Neshoma Plan's definition of a "participating provider." Under the Neshoma Plan, "participating providers" are entities that have either agreed to accept GHI's scheduled rates or otherwise contracted with GHI for different rates as payment in full for covered services.

On July 24, 2003, GHI received a bill for $387,273.23 from TUCMC for the Kahn surgery. The total amount included the implant ($212,220) and the surgery ($175,053.23). GHI determined these charges were unreasonable. It also refused to pay $5,582.20 for the "blood storage procedure." Because the Multiplan network's 10% discount would not have made the bill "reasonable" or the least expensive of the Neshoma Plan's five options, GHI elected not to access the Multiplan discount. Instead, GHI remitted a check for $117,656.54, that is $97,656.54 for the surgery and $20,000 for the implant. GHI sent letters to both Kahn and TUCMC explaining its decision. TUCMC did not object and cashed the check.

TUCMC's third claim arises from surgery performed on Nadia Zehngut. At the time of her surgery, Zehngut was a beneficiary of the self-insurance health benefit plan maintained by the New York City Transit Authority ("NYCTA") for eligible members of the Transport Workers Union ("TWU") and their dependents. GHI has never entered into a group health insurance agreement with the NYCTA or the TWU to provide health insurance coverage to its employees or members. GHI points to an "administrative services agreement" between it and the NYCTA that initially took effect on August 1, 2003. Though the agreement was never signed by either party, both GHI and NYCTA have nevertheless operated by its provisions. According to the agreement, GHI agreed to perform only administrative services on behalf of the NYCTA with regard to the implementation of its health plan. The agreement states:

> Except as expressly set forth in this Agreement or as otherwise provided by law, GHI shall not have any discretion or authority with respect to the control, handling or disposition of any Plan assets. With respect to Plan claims adjudication activities and the processing and payment of claims submitted by and on behalf of Members for covered services with respect to the Benefits, *GHI neither insurers nor underwrites any liability of the Customer under the Plan.* With respect to the Customer as Plan Sponsor and/or Plan Administrator, GHI acts only as the provider of the services described in this Agreement and, with respect to members, acts only as the agent of the Customer as Plan Sponsor and/or Plan Administrator, *GHI is not providing any insurance coverage or insurance benefits to either the Customer or to the Members of the Customer's Plan* ... In no event does this Agreement confer upon GHI, nor does GHI assume the status, duties, or role of Plan Administrator or Plan Spon-

---

**1.** The Neshoma Plan presents the options in bullet point format. For convenience, we list the factors with numbers.

sor as those terms are normally understood under ERISA.

(emphasis added). Relying on this unsigned agreement, GHI has refused to pay any amount to TUCMC for Zehngut's surgery.

### III.

■ We first discuss TUCMC's Zehngut claim against GHI before turning to address the Rosenbaum and Kahn claims. There is no evidence before us that at the time of her surgery GHI insured Zehngut. GHI never entered into a group health insurance contract with the NYCTA and merely acted as the agent of the NYCTA in accordance with an unsigned agreement. Furthermore, GHI did not have any control over the assets of the TWU Plan and never assumed the role of Plan Administrator or Plan Sponsor under ERISA. The record clearly demonstrates GHI was not providing Zehngut with health insurance when she underwent her operation at TUCMC. Therefore, GHI cannot be liable to pay for that surgery. Accordingly, we will grant the motion of GHI for summary judgment with regard to the Zehngut claim.

We now consider TUCMC's breach of contract claims against GHI regarding the Rosenbaum and Kahn surgeries. GHI argues that TUCMC's breach of contract action is preempted by § 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") and, in the alternative, that it is not obligated to pay under state contract law. *See* 29 U.S.C. § 1144(a).

It is undisputed that both the Neshoma and Mesivta group health contracts with GHI are "employee welfare benefit plans" under ERISA. *See* 29 U.S.C. § 1002(1). Section 514 of ERISA provides that the provisions of Titles I and IV of that statute "supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan ..." (emphasis added). The Supreme Court has given a broad interpretation to the preemption language in § 514(a). It has said that "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or references such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Court has noted that where "inquiry must be directed to the plan ... [a] judicially related cause of action 'relates to' an ERISA plan" and is therefore preempted. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In recent years the Supreme Court has recognized that in determining whether a state law is preempted by § 514(a), a court must look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *N.Y. Conference of Blue Cross v. Travelers, Ins.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The primary objective, according to the Supreme Court, "was to avoid the multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* at 657, 115 S.Ct. 1671.

■ While TUCMC has no contract with GHI, TUCMC does have an agreement with Multiplan. Under that agreement, TUCMC must accept 90% of its billed charges as payment in full for its services from members of Multiplan's network. GHI has a contract with Multiplan entitled "Prompt Payment Discount Agreement." TUCMC argues that GHI is bound under these agreements to pay it 90% of its billed charges. The agreement between GHI and Multiplan, however, provides GHI the "right to access" Multiplan's facility networks and "contract rates" on a "non-exclusive basis" on behalf

of those it insures. Since GHI has a "right to access" on a "non-exclusive basis," it is not required to utilize the Multiplan "contract rates" regarding any claim it receives from TUCMC. Rather, GHI's sole obligation under this agreement is to pay a healthcare provider member of Multiplan's network 90% of its charges for covered services when GHI has accessed the Multiplan discount pursuant to its agreement with Multiplan regarding a specific bill. In exchange for GHI's non-exclusive right to access the Multiplan network, GHI agreed to pay Multiplan an "access fee," namely the sum total of the "annual administrative fee" and "a service fee" determined by the value of the claims repriced during a given year. To accept TUCMC's interpretation of GHI's agreement with Multiplan would not only contradict its plain meaning but would also expose GHI to obligations in excess of what it had agreed to pay under the Neshoma and Mesivta Plans.

■ Since GHI did not access the Multiplan Agreement in connection with the Rosenbaum or Kahn bills, GHI has no obligation to TUCMC to pay its charges. GHI's sole responsibility for the medical services rendered to Rosenbaum and Kahn arises out of the requirements of the Mesivta and Neshoma Plans respectively. Therefore, we must look to the Plan documents, not the contracts between GHI and Multiplan and between Multiplan and TUCMC, to determine what, if anything, GHI would owe for the health care services. Because we cannot resolve that question without referencing and interpreting the Mesivta and Neshoma Plans, TUCMC's breach of contract action "relates to" an employee benefit plan within the meaning of § 514(a) and is therefore preempted by ERISA. *See also Ingersoll–Rand,* at 140, 111 S.Ct. 478.

■ Because ERISA preempts state contract law, ERISA controls the rights of TUCMC against GHI. Section 502(a) of ERISA, however, only permits actions by beneficiaries, participants, or fiduciaries of a plan. *See* 29 U.S.C. § 1132(a). TUCMC does not fit into any of these categories, and no beneficiary or participant has assigned to it his or her rights to sue.[2] TUCMC is simply a provider of healthcare services to a beneficiary of a plan. Thus, while ERISA preempts TUCMC's state law contract claim against GHI under § 514, TUCMC has no claim for relief against GHI under ERISA because of § 502.

TUCMC argues that the decision of our Court of Appeals in *Pascack Valley Hospital v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393 (3d Cir. 2004), compels the conclusion that its claims are not preempted by ERISA. In that action originally filed in the state court, a hospital sued an employee benefit plan alleging breach of contract for failure to pay for services rendered to one of the plan's beneficiaries. Defendant removed the action to federal court on the ground that it was preempted by § 514 of ERISA.

**2.** Though most circuits have held that an entity not enumerated in § 502 can acquire standing to sue under that section by virtue of an assignment from a participant or beneficiary, our Court of Appeals has not resolved the question. *See Pascack Valley,* at 401 n. 7. *See also I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Council Ins. Trust Fund,* 136 F.3d 114 (2d Cir.1998); *Yarde v. Pan Am. Life Ins. Co.,* 67 F.3d 298 (4th Cir.

1995); *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988); *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991); *Lutheran Med. Ctr. of Omaha, NE v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan,* 25 F.3d 616 (8th Cir.1994); *Misic v. Bldg. Serv. Employees Health & Welfare Trust,* 789 F.2d 1374 (9th Cir.1986); *Cagle v. Bruner,* 112 F.3d 1510 (11th Cir.1997).

The Court of Appeals remanded it to the state court since under the well-pleaded complaint rule, plaintiff had not stated, and indeed could not state, an ERISA claim. The court noted that the plaintiff in that case was not a beneficiary, participant, or fiduciary under ERISA, and it did not have standing to bring such a claim. *Id.* at 400. The Court of Appeals did not preclude defendants from asserting ERISA preemption as a complete defense to the action once it was returned to the state court. *Pascack Valley* merely concerned the issue of removal and remand. Contrary to what TUCMC argues, the Court of Appeals did not hold that the plaintiff stated a valid contract claim or that the claim was not preempted by ERISA. *Id.* at 404.

In contrast, this pending action was filed originally in this court, and we have subject matter jurisdiction because of diversity of citizenship under 28 U.S.C. § 1332, even if we do not have federal question jurisdiction under 28 U.S.C. § 1331. Since subject matter jurisdiction is not an issue in this case, *Pascack Valley* is inapposite.

██ Even if ERISA does not preempt TUCMC's state law breach of contract claims against GHI, the contracts between the parties do not entitle TUCMC to relief. As noted above, in its agreement with Multiplan, GHI simply agreed to pay for the "right to access" the 10% discount on a "non-exclusive basis" on behalf of its insureds. GHI is never obligated to access the network discount and merely agreed to pay a healthcare provider which is a member of Multiplan's network 90% of its charges for covered services when GHI has accessed the Multiplan discount regarding a specific bill. Only when GHI elects to take advantage of the Multiplan network discount in connection with charges billed by TUCMC is TUCMC a third-party beneficiary of the contract between GHI and Multiplan. Because GHI never accessed the Multiplan discount to reprice the TUCMC bills at issue regarding Rosenbaum or Kahn, GHI did not violate its contract with Multiplan. Therefore, GHI cannot be liable to TUCMC for breach of contract.

██ TUCMC counters that it is actually a "participating provider" under the contracts between GHI and Multiplan and between TUCMC and Multiplan and was treated as such by GHI. TUCMC argues that by joining the Multiplan network it became one of GHI's "participating providers" by virtue of GHI's agreement with Multiplan and must pay TUCMC as a participating provider in the amount of 90% of the billed charges. We disagree. While TUCMC is a Member Provider in Multiplan's network, TUCMC's status as such neither requires GHI to access the Multiplan discount nor makes TUCMC a "participating provider" under the Mesivta and Neshoma Plans. There is simply nothing in the agreements before the court or otherwise in the record that supports TUCMC's various arguments that it is a participating provider requiring GHI to pay the charges it seeks in the lawsuit.

## IV.

██ Finally, TUCMC brings breach of contract claims against Multiplan for the services rendered to all three patients. According to TUCMC, Multiplan breached its agreement when Multiplan refused to pay the billed charges in a timely fashion. These claims are not preempted by ERISA because they do not "relate to" an employee benefit plan within the meaning of § 514. *See* 29 U.S.C. § 1144. Any claim TUCMC has against Multiplan depends on the terms of their contract and not on the terms of any ERISA plan covering the patients at issue.

■ Temple University Health System (which includes TUCMC) signed a Prompt Payment Discount Agreement with Multiplan in 1998. In the contract, TUCMC agreed to join the Multiplan network and accept 90% of its billed charges if paid within thirty days of the receipt of the charges. Multiplan insists that despite clear language that "[Multi][p]lan shall reimburse [TUCMC] 90% of billed charges," it was never invoiced for any charges. Instead, Multiplan maintains it is merely a "middleman" that builds a network of facilities that agree to accept and insurers who agree to pay a discounted rate for medical services promptly. We need not decide whether the failure to bill Multiplan is decisive. We conclude that Multiplan is not obligated to pay TUCMC's billed charges that are in dispute for medical services provided to Rosenbaum or Kahn because GHI did not elect to access the Multiplan discount regarding billed charges in either case under its agreement with Multiplan. Likewise, Multiplan is not required to pay TUCMC for Zehngut's surgery because NYCTA did not access the Multiplan discount. Because GHI did not access the discount and Multiplan does not directly insure Rosenbaum or Kahn, Multiplan is not responsible to pay for TUCMC's services and is entitled to summary judgment in its favor.

### V.

In summary, TUCMC's claims for breach of contract against GHI for payment regarding the Rosenbaum and Kahn surgeries are preempted by § 514(a) of ERISA, but TUCMC has no claim for relief against GHI because of § 502 of ERISA. Even if ERISA does not preempt the Rosenbaum and Kahn claims against GHI, TUCMC cannot prevail on its contract claims because GHI did not breach any agreements. Likewise, TUCMC has no contract claim against Multiplan regarding Rosenbaum and Kahn because the disputed charges were paid by GHI without accessing the Multiplan discount. TUCMC cannot recover its billed charges against GHI for Zehngut's surgery because GHI did not insure Zehngut directly or under the TWU Plan. Similarly, TUCMC cannot collect its charges for Zehngut's surgery from Multiplan because its network discount was never accessed by Zehngut's ERISA Plan. Finally, the cross-claim of Multiplan against GHI for indemnity fails since TUCMC cannot recover against Multiplan. Accordingly, we will grant the motions of both Multiplan and GHI for summary judgment.

### ORDER

AND NOW, this 25th day of January, 2006, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant Group Health, Inc. for summary judgement against Temple University Children's Medical Center is GRANTED;

(2) the motion of defendant Multiplan, Inc. for summary judgment against Temple University Children's Medical Center is GRANTED; and

(3) judgment is entered in favor of defendants Group Health, Inc. and Multiplan, Inc. and against plaintiff Temple University Children's Medical Center.