981 So.2d 544 (2008)
AMERICAN MARITIME OFFICERS UNION, Petitioner,
v.
David MERRIKEN, Respondent.
Nos. 4D08-476, 4D08-489.
District Court of Appeal of Florida, Fourth District.
April 23, 2008.
Rehearing Denied June 11, 2008.
Philip E. Ward, Roland E. Schwartz, Jeffrey T. Kuntz and Daniel Alter of Gray Robinson, P.A., Ft. Lauderdale, for petitioner American Maritime Officers Union.
April L. Boyer and Robert C. Leitner of Kirkpatrick & Lockhart Preston Gates Ellis LLP, Miami, for petitioners American Maritime Officers Plans, American Maritime Officers Vacation Plan, American Maritime Officers Pension Plan, American Maritime Officers Medical Plans, American Maritime Officers Safety and Education Plan, American Maritime Officers 401(K) Plan, American Maritime Officers Services, American Maritime Officers Money Purchase Benefit Plan, American Maritime Officers Joint Employment Committee.
*546 William J. Brown of William J. Brown, P.A., and Robert N. Harris, P.A., Miami, for respondent.
WARNER, J.
Petitioners, a union and its benefits plan, both seek certiorari review of orders denying their motions to dismiss respondent's whistleblower complaint. We have consolidated the cases for purposes of this opinion, and treat these as petitions for writ of prohibition. Petitioners claim that the action is preempted by federal law. Because respondent's complaint against the benefits plan is completely preempted by federal ERISA law, we grant the petition as to the plans. We deny the petition insofar as it alleges a cause of action for tortious interference against the union.
David Merriken was the executive director of American Maritime Officers' Plans from 1995-2000. The Plans are trusts created for the benefit of past and present workers of members of the American Maritime Officers Union, constituting around 4,000 officers serving in the U.S. flag merchant fleet. In his complaint, Merriken alleges that he was inexperienced for the position he held and was hired because he was a personal friend of Michael and Robert McKay. Michael McKay was President of the Union. Robert McKay was Secretary-Treasurer of the Union and a trustee of the Plans. The Plans paid Merriken's salary and that of some 200 personnel. According to Merriken, the Plans owned and controlled approximately $1 billion in assets.
During his employment Merriken went to school to obtain a B.S. degree in business. While obtaining his degree, he discovered that the Plans were being administered in violation of federal and state laws. Specifically, the Union was using the Plans' assets and funds for its own uses.
Merriken alleged that the McKays and others engaged in mail fraud, embezzlement, and theft. Through such, they used Plan monies and assets for the personal benefit of the Union and Plans' officers, directors, trustees, and employees. Relevant to ERISA, he alleged that the defendants "engaged in bribery and graft in connection to an ERISA plan in violation of 18 U.S.C. s.1954."
Merriken told the McKays and others, including the Plans' legal counsel, of the violations. No corrective action was taken, and the illegal activities continued. Merriken alleges that as a direct result of his objections, "the terms and conditions of his employment were adversely affected by Defendants."
On his own accord, Merriken reported the defendants' illegal activities to federal law enforcement authorities (the Justice Department and Department of Labor). The government, in turn, solicited his assistance.
Merriken complied. He did so by secretly wearing a wire for a year, recording some 200 conversations with Plan and Union Officials. Once the defendants discovered that they were being investigated, they began their cover up.
Merriken was fired on June 28, 2000. He alleges that it was either because he refused to participate in the cover up, or because of his participation with federal authorities, or for both reasons.
According to Merriken, the McKays and others pleaded guilty to mail fraud and embezzling from a labor organization. Another officer pleaded guilty to aiding and abetting others to make federal election campaign contributions.
With that factual background, Merriken alleged in count I retaliatory discharge based on section 448.102, Florida Statutes *547 (the Whistle-blower statute). This count is directed to the Plans and the Union. Count II alleged tortious interference by the Union with Merriken's business-employment relationship with the Plans.
Arguing federal preemption under ERISA, the Union and the Plans moved to dismiss the complaint. One argument was that ERISA grants a specific remedy for the same retaliatory discharge and/or interference with a protected right that Merriken asserts. See 29 U.S.C. § 1140. The trial court denied the motion concluding that the stated causes of action were not preempted by federal law, as the state actions did not encroach on the relationships regulated by ERISA. The trial court reasoned that the relationship between the Union and the Plans and the plaintiff is one of employer-employee, and there are no allegations that could be interpreted that the termination was in order to avoid benefit payments. The trial court concluded that there will be no need for it to rule on any issues of federal law, based on the allegations in the complaint. This petition follows.
Federal preemption is an affirmative defense, which may be raised in a motion to dismiss. Boca Burger, Inc. v. Forum, 912 So.2d 561, 568 (Fla.2005). In Boca Burger, the supreme court noted that Florida courts, "including this Court, have held that the issue of federal preemption is a question of subject matter jurisdiction." Id. (emphasis supplied). Because prohibition lies to prevent a court from proceeding in a suit in which it has no subject-matter jurisdiction, we have jurisdiction. See Mandico v. Taos Constr., Inc., 605 So.2d 850, 854 n. 5 (Fla.1992).
Under section 448.102, Florida Statutes,
An employer may not take any retaliatory personnel action against an employee because the employee has:
(1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
(2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.
ERISA has its own whistleblower protection. Section 510 of ERISA, 29 U.S.C. § 1140, provides:
It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans *548 Disclosure Act. In the case of a multiemployer plan, it shall be unlawful for the plan sponsor or any other person to discriminate against any contributing employer for exercising rights under this chapter or for giving information or testifying in any inquiry or proceeding relating to this chapter before Congress. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.
(emphasis supplied). ERISA defines "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9) (emphasis supplied). An "employee organization" is "any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships. . . ." 29 U.S.C. § 1002(4).
Section 502(a) of ERISA, 29 U.S.C. § 1132, provides for the civil remedies for violations of ERISA:
(a) Persons empowered to bring a civil action
A civil action may be brought
. . . .
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .
It also provides for exclusive jurisdiction of the federal courts:
(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a participant. . . .
In Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Supreme Court held that the exclusive remedy provision of section 1132 (ERISA section 502) warranted complete preemption of claims which constituted violations of section 1140 (ERISA section 510). McClendon had brought a state claim of wrongful discharge when his employer terminated him to avoid the vesting of McClendon's pension benefits. He sought lost future wages and benefits. While the Texas courts determined that ERISA did not preempt a state action, the Supreme Court held that McClendon's action was preempted, both because his claim related to ERISA and thus came within express preemption under section 1144(a) and because of conflict preemption under sections 1140 and 1132.[1]
As to conflict preemption, the court held that McClendon's cause of action would be preempted because it directly conflicted with an ERISA cause of action. Section 1140 provided that an employer violates the statute by discharging an employee for interfering with any right to which an employee may be entitled under the plan. This was the essence of the wrongful discharge claim McClendon brought in state court. The court then looked at the civil enforcement provisions of section 1132 and the exclusivity of federal jurisdiction under section 1132(e)(1). It concluded that "the exclusive remedy provided by § 502(a) is *549 precisely the kind of `special featur[e]' that `warrant[s] pre-emption' in this case." Id. at 144, 111 S.Ct. 478 (citation omitted). It held:
Unquestionably, the Texas cause of action purports to provide a remedy for the violation of a right expressly guaranteed by § 510 and exclusively enforced by § 502(a). Accordingly we hold that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected" by § 510 of ERISA, "due regard for the federal enactment requires that state jurisdiction must yield."
Id. at 145, 111 S.Ct. 478 (emphasis supplied) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 n. 8, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)); see also Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).
In this case, the conduct under the Florida Whistle-blower statute on which Merriken has sued is protected under 29 U.S.C. § 1140 (ERISA section 510), which expressly states: "It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter. . . ." The holding of McClendon has been applied to preempt state whistleblower suits under similar statutes as Florida's. See, e.g., Anderson v. Elec. Data Sys. Corp., 11 F.3d 1311 (5th Cir.1994); Hashimoto v. Bank of Haw., 999 F.2d 408 (9th Cir.1993); Authier v. Ginsberg, 757 F.2d 796 (6th Cir.1985); McSharry v. Unum-Provident Corp., 237 F.Supp.2d 875 (E.D.Tenn.2002); Fairneny v. Savogran Co., 422 Mass. 469, 664 N.E.2d 5 (1996); Andrews v. Alaska Operating Eng'rs-Employers Training Trust Fund, 871 P.2d 1142 (Alaska 1994).
In opposition to this clear and substantial authority, Merriken argues that section 1140 does not apply, because he sued the Plans themselves and not a person, and section 1140 can be violated only by a "person." A trust is a "person" under ERISA, and he has alleged that the Plans are trusts. A labor union is an "employee organization" and thus the Union is also a person within the meaning of the statute. Therefore, section 1140 applies. The cases Merriken cites in support of his position that the Plans cannot be sued are simply inapposite and do not involve an employee of the plan itself suing the employer-plan for wrongful discharge.
Because the whistleblower activities alleged in Merriken's complaint are protected by section 1140, the matter is preempted by federal law. Ingersoll-Rand. The circuit court has no subject-matter jurisdiction to consider these actions.
With respect to the tortious interference claim against the Union, however, the claim is not barred by either express or conflict pre-emption. Under the tortious interference cause of action, the Union could not be considered the employer of Merriken,[2] and section 1140 conflict preemption would not apply. Nor is the cause of action expressly preempted by section 1144 which preempts state actions which "relate to" ERISA plans. The cause of action for tortious interference requires only that the plaintiff prove that the defendant Union interfered with his employment with the Plans, regardless of the reason. The entire matter may be proved without consideration of ERISA, and therefore this cause of action is not preempted. Indeed, the Union makes no argument in its petition specifically directed *550 to the tortious interference claim, nor does it cite any cases which would apply express preemption to such a claim.
We therefore grant the Plans' petition and grant in part the Union's petition with respect to the whistleblower claim. We deny the Union's petition as to the tortious interference claim.
POLEN and HAZOURI, JJ., concur.
NOTES
[1] Although the parties argue at length regarding express preemption as explained in Ingersoll-Rand, we need not decide this case on that ground as conflict preemption is clear.
[2] An employer cannot tortiously interfere with itself in discharging an employee.